3 P.3d 977 (1999)
197 Ariz. 57
In the Matter of the ESTATE OF Ralph Vincill SHUMWAY, Deceased.
Adelida Vega Rodriguez, Petitioner-Appellee,
v.
Virginia Gavette, Personal Representative-Appellant.
No. 1 CA-CV 98-0431.
Court of Appeals of Arizona, Division 1, Department C.
September 7, 1999.
Review Granted in Part March 14, 2000.
*978 *979 *980 Jennings, Strouss & Salmon, P.L.C. by David Brnilovich, David B. Earl, and Stacey A. Dowdell, Phoenix, for Appellant.
Ronald G. Cooley and John R. Coll, Phoenix, for Appellee.

OPINION
BERCH, Judge.
¶ 1 Virginia Gavette appeals the trial court's judgment upholding the validity of her father's will and enforcing the will's penalty clause against her and her sister, Nikki Cole. For the following reasons, we affirm the trial court's rulings.

INTRODUCTION
¶ 2 This case concerns the validity of a will executed by Ralph Shumway, who died on July 2, 1997. On June 26, 1997, less than one week before his death, Shumway executed a will prepared by his helper and bookkeeper, Adelida Rodriguez, which bequeathed one-fourth of his estate to Rodriguez, one-fourth to a non-party, and one-half to his four daughters. Virginia Gavette, one of Shumway's daughters, challenged the validity of the will on the grounds that Shumway was incompetent when he executed the will and that Rodriguez exerted undue influence over him.
¶ 3 Before trial, Gavette moved to strike Rodriguez's pleadings, arguing that, in producing the will, Rodriguez engaged in the unauthorized practice of law and that the court could not, as a matter of law, recognize the will. After argument at the pre-trial management conference, the trial court denied the motion to strike. After a bench trial, the trial court determined that the will was valid, finding that Shumway was competent[1] and was not unduly influenced by Rodriguez. The court also enforced the will's penalty clause against Gavette and her sister, Nikki Cole.
¶ 4 Gavette timely appealed, raising three issues: (1) whether all or part of the will is invalid because Rodriguez engaged in the unauthorized practice of law, (2) whether sufficient evidence supported the finding that Shumway was not unduly influenced by Rodriguez, and (3) whether probable cause existed to challenge the will, thus precluding enforcement of the penalty clause.

DISCUSSION
A. Unauthorized Practice of Law
¶ 5 Gavette first argues that Rodriguez engaged in the unauthorized practice of law by assisting Shumway in preparing his will. Thus, Gavette argues, the trial court should have stricken the entire will or, at the very least, should have stricken the bequest to Rodriguez.
*981 ¶ 6 As a preliminary matter, we address the argument that the unauthorized practice of law issue is not before us because it was not properly raised before the trial court. Gavette raised the issue in a motion to strike, a motion that allows a court to strike a pleading or portion of a pleading that contains "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Ariz. R. Civ. P. 12(g). We agree that the motion to strike was an inappropriate procedure by which to raise the unauthorized practice of law issue: The motion directly attacked the merits of Rodriguez's petition; the issue should have been raised in Gavette's motion for summary judgment.[2]See Birth Hope Adoption Agency, Inc. v. Doe, 190 Ariz. 285, 287, 947 P.2d 859, 861 (App.1997), review denied (Dec. 16, 1997) (holding that it is inappropriate to challenge merits in a motion to strike). Nonetheless, the trial judge heard oral argument and explicitly ruled on the merits of the issue, stating that "under Arizona law, Adelida Rodriguez' conduct did not amount to unauthorized practice of law." Because Rodriguez is not surprised or prejudiced by Gavette's claim that the ruling was error, we will reach the merits.
¶ 7 Our supreme court has defined the "practice of law" as engaging in those tasks that "lawyers customarily have carried on from day to day through the centuries ... [including] assisting or advising another in the preparation of [legal] documents ... either with or without compensation." See State Bar v. Arizona Land Title and Trust Co., 90 Ariz. 76, 95, 366 P.2d 1, 14 (1961), modified on other grounds, 91 Ariz. 293, 371 P.2d 1020 (1962); see also In re Fleischman, 188 Ariz. 106, 110, 933 P.2d 563, 567 (1997). This court has also recognized, however, that "[t]he line between what is and what is not the practice of law cannot be drawn with precision" and that "between the two, there is a region wherein much of what lawyers do every day in their practice may also be done by others without wrongful invasion of the lawyers' field." Morley v. J. Pagel Realty & Ins., 27 Ariz.App. 62, 65, 550 P.2d 1104, 1107 (1976) (quoting Gardner v. Conway, 234 Minn. 468, 48 N.W.2d 788, 794 (1951)).
¶ 8 Although, in most cases, preparing a will for another will require an element of legal skill, we agree with the West Virginia Supreme Court that "merely reducing the words of another person to writing does not constitute the preparation of a legal instrument and, thus, does not constitute the practice of law." Brammer v. Taylor, 175 W.Va. 728, 338 S.E.2d 207, 212 (1985); see also People v. Landlords Prof'l Servs., 215 Cal.App.3d 1599, 264 Cal.Rptr. 548, 553 (1989) (The practice of law does not include services that are "merely clerical, i.e., ... [filling] the forms in at the specific direction of the client. . . ."). Thus, if Rodriguez acted as nothing more than a scribe and did not advise Shumway on matters requiring "the skill peculiar to one trained and experienced in the law," then she did not practice law. Gustafson v. V.C. Taylor & Sons, Inc., 138 Ohio St. 392, 35 N.E.2d 435, 437 (1941).
¶ 9 Rodriguez's conduct in assisting Shumway with his will involves questions of fact. See, e.g., State v. Franks, 262 N.C. 94, 136 S.E.2d 623, 631 (1964) (while defining the practice of law is a question of law, whether specific acts meet the definition is a question of fact). Two factors by themselves allow us to affirm the trial court on this issue. First, although the court heard oral argument, we were not provided a transcript. Thus, we must assume that the record supported the trial court's conclusion that Rodriguez did not engage in the unauthorized practice of law. See Bliss v. Treece, 134 Ariz. 516, 519, 658 P.2d 169, 172 (1983). Second, the trial court did not make specific findings of fact, and none were requested. Thus, we "must assume that the trial court found every fact necessary to support its [ruling] and must affirm if any reasonable construction of the evidence justifies the decision." Stevenson v. *982 Stevenson, 132 Ariz. 44, 46, 643 P.2d 1014, 1016 (1982).
¶ 10 But we need not rely exclusively on assumptions, as our review of the evidence later adduced at trial supports the trial court's conclusions. The record reflects that Rodriguez had the computer program from which the will was generated well before she met Shumway; thus, she did not procure a particular program or form of will with Shumway in mind. Nor could she have advised him on the selection of the proper form, for the record demonstrates that the program did not allow editing or provide options as to the type of form or provision to be included; it merely asked questions of the user, the answers to which generated the final document. According to Rodriguez, she simply read the questions to Shumway, who was legally blind, and he provided the answers.
¶ 11 Moreover, the record reflects that Rodriguez never held herself out to Shumway as competent to do anything more than simply complete forms. When asked at trial about the first will she prepared for Shumway in November 1993, Rodriguez stated the following:
He [Shumway] asked if I was competent enough to draw up a will for him, and I told him no. He says, "Well, you fill out the forms on other contracts." He says, "Well, why can't you do my will?"
I saidhe says, "All I want is for my brother to be executor, Newell Shumway, to be executor and to be beneficiary of my estate."
I said, "Well, I can do that."
Finally, the record reveals no evidence that Rodriguez ever attempted to advise Shumway on the legal effects of his decisions. This record supports the trial court's earlier made conclusions that Rodriguez acted as nothing more than a scribe in assisting Shumway with his will and thus that she did not engage in the practice of law.[3]
¶ 12 We are aided in reaching our conclusion by the unfortunate result that would obtain if we held otherwise. A person in Shumway's position, mentally competent yet legally blind and requiring assistance for certain basic tasks such as reading and writing, would not be able to dispose of his property as he pleases without incurring the expense of hiring an attorney to write his will. In such situations, public policy should support one person's assisting another by simply filling in blanks on a pre-printed, uneditable form, at the specific direction of the other, without advising as to the legal effects of such requests. The trial court implicitly found that this was all that Rodriguez did in this case.
B. Undue Influence
¶ 13 Gavette next argues that the trial court abused its discretion by finding that Rodriguez met her burden of proving, by clear and convincing evidence, that she did not exert undue influence over Shumway.
¶ 14 Rodriguez conceded that she had a confidential relationship with Shumway and therefore that the will was presumptively invalid. See Stewart v. Woodruff, 19 Ariz. App. 190, 194, 505 P.2d 1081, 1085 (1973); Evans v. Liston, 116 Ariz. 218, 220-21, 568 P.2d 1116, 1118-19 (App.1977). She thus bore the burden to prove, by clear and convincing evidence, that she did not unduly influence Shumway. See Stewart, 19 Ariz. App. at 194, 505 P.2d at 1085.
¶ 15 Undue influence can be shown by evidence of several factors, such as (1) whether Rodriguez was active in the will's preparation and execution, (2) whether Rodriguez had a confidential relationship with Shumway, (3) whether Rodriguez made any fraudulent representations to Shumway, (4) whether the will's execution was concealed from interested parties, (5) whether the will was consistent with Shumway's prior declarations, (6) whether Shumway was susceptible to undue influence, and (7) whether the will was "reasonable rather than unnatural in view of [Shumway's] circumstances, attitudes, and family." In re Estate of McCauley, 101 Ariz. 8, 10-11, 415 P.2d 431, 433-34 *983 (1966). We will not upset the trial court's finding that Rodriguez met her burden of proving a lack of undue influence over Shumway unless it is clearly erroneous.[4]See id. at 10, 415 P.2d at 433 (the presence of undue influence is a question of fact).
¶ 16 Despite Rodriguez's burden, the evidence adduced at trial strongly supports the trial court's decision. Although Rodriguez was active in the preparation of the will and she had a confidential relationship with the decedent, factors that serve to shift the burden to Rodriguez, see Stewart, 19 Ariz. App. at 194, 505 P.2d at 1085, the evidence reveals neither fraudulent representations to Shumway nor attempts to conceal the will's execution from his children. Further, although the will was very different from Shumway's first will, which left his entire estate to his brother Newell, and slightly different from a draft of his final will, the changes to the final draft all inured to the benefit of his children. Moreover, the changes made sense in the context of this case: By the time Shumway revised his will, his brother Newell was 86 years old and in extremely poor health. The draft of the final will left twenty-five percent of his estate to Max, another brother. After the reading of that draft, it was agreed that Max would receive only approximately $5,000, to be used for his burial expenses. His twenty-five percent share was to be divided among Shumway's four children, in addition to the twenty-five percent that Shumway had already left them. The final draft of the will reflected this agreement.
¶ 17 In finding that Shumway's bequests were voluntary, the trial court relied, at least in part, on the fact that changes were made to the will:
The draft will was, in fact, changed to reflect the decedent's desires. The decedent had every right to leave his money to whomever he wanted, even if it displeased his four children. His previous will, which was also drafted by Adelida V. Rodriguez, in fact, left his children even less money.
¶ 18 The final two factorswhether Shumway was susceptible to undue influence and whether the will's terms were reasonable and naturalalso support the trial court's finding that Shumway was not unduly influenced. Several witnesses testified, and it was uncontroverted, that Shumway was very strong willed, adamant that things be done his way. Exemplifying his strong personality was Bishop Meyers' testimony regarding a meeting with Shumway just two days after Shumway executed his final will:
[Counsel]: Tell me about the conversation you had with [Shumway] on [June 29, 1997].
[Meyers]: Well, he was a little bit upset. He said he had changed his will, that his brother [Max Shumway] didn't want anything, that his funeral expenses would be taken care of, and that he had changed it. And he was pretty upset at one of the kids that she didn't understand it, thathe told me he told her thatto get her head out of her bottom and to open her ears and asked her what she didn't understand, that it's written down, and that's the way he wanted it.
¶ 19 Moreover, there was evidence that Shumway was not close to his children. Bishop Meyers testified that although he had known Shumway for more than seven years and visited him at least monthly, Nikki Cole was the only daughter that Shumway ever talked about. Nikki Cole testified that, of all the children, she was the closest to her father and that none of the other three had "significant contacts" with him.
¶ 20 There was, on the other hand, strong evidence that Rodriguez played a significant role in Shumway's life. For example, Bishop *984 Meyers testified that Shumway often talked about her, and that "she was a great help to him." Rodriguez testified that Shumway wanted to reward her for her services by giving her a portion of his estate: "He told me that I deserved it, that he could not pay me my salary for all the hours that I put in for him, all the extra things that I did. So this was a way to compensate me." Based on this evidence, the trial court reasonably found that Shumway was not susceptible to undue influence and that his disposition was not unnatural. See Evans, 116 Ariz. at 221, 568 P.2d at 1119 (stating that decedent's disposition "cannot be said to be unnatural in light of the fact that appellant cared for her father during the last year or so before his death").
¶ 21 Gavette argues that Rodriguez could not have met her burden because the only witnesses who testified regarding Shumway's intentionsBishop Meyers, Max Shumway, JoAnne and Irene De La Rosa, and Rodriguez herselfwere interested in the outcome of the case. We do not agree for two reasons. First, Gavette overstates the potential bias of the witnesses. Max Shumway's interest in the estate was relatively insignificant: he was cut out of the will entirely except for approximately $5,000, which was to provide for his burial expenses. JoAnn and Irene De La Rosa had no interest in the will, although they were Rodriguez's cousins. Also, both the notary who witnessed the signing and long-time family acquaintance Travis Pettyjohn, who do not appear to have an interest in the case, testified to relevant matters regarding Shumway's susceptibility to influence. The notary testified that Shumway seemed to understand what he was doing and did not seem to have been coerced in any way. Pettyjohn testified that Shumway was sharp and alert when Pettyjohn saw him about three weeks before his death and that Shumway had a strong will and relentless desire to have his way.
¶ 22 Moreover, that witnesses may have been biased does not preclude Rodriguez from meeting her burden of showing by clear and convincing evidence that she did not unduly influence the decedent. We afford great weight to the trial court's assessment of witnesses' credibility and will not reverse the trial court's weighing of the evidence absent clear error. See City of Prescott v. Town of Chino Valley, 166 Ariz. 480, 486, 803 P.2d 891, 897 (1990). The transcript provided us shows that, on cross-examination, Gavette's counsel was unable to effectively tarnish the credibility of any of the witnesses. Gavette's own witnesses failed to dispute Shumway's intent or demonstrate his susceptibility to influence. The record reveals a coherent, credible story that Shumway was not influenced by Rodriguez and that the June 26, 1997, will accurately reflected Shumway's intended disposition of his estate. We find no error in the court's ruling.
C. Penalty Clause
¶ 23 Finally, Gavette argues that even if we affirm the validity of the will, we should reverse the court's enforcement of the will's "forfeiture" or "penalty" clause against Gavette and her sister, Nikki Cole.
¶ 24 A penalty clause, which prohibits anyone who challenges a will from inheriting under it, may be included in a will to prevent the depletion of an estate by disgruntled heirs. Courts generally try to give effect to the testator's intent, unless doing so is prohibited by rules of law or public policy. See A.R.S. § 14-1102(B)(2) (1995) (law should be liberally construed to "make effective the intent of a decedent"). In Arizona, forfeiture clauses are not per se invalid, although Arizona, like most states,[5] views such clauses with disfavor: "A provision in a will purporting to penalize an interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists *985 for that action."[6] A.R.S. § 14-2517 (1995).
¶ 25 This statute has not yet been interpreted in a published opinion, nor has probable cause, as it is used in this section, been defined. Our duty is to give the law a fair and reasonable interpretation that comports with both the plain language of the statute, see A.R.S. § 1-213 (1995), and the legislature's intent. See A.R.S. § 1-211(A) (1995); City of Phoenix v. Superior Court, 139 Ariz. 175,178, 677 P.2d 1283, 1286 (1984).
¶ 26 In general, when the legislature employs terms that have a set meaning in the law, that meaning will carry over from one law to another. Indeed, the legislature has commanded that technical words and phrases that "have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning." See A.R.S. § 1-213. Probable cause is such a term.
¶ 27 The seminal case discussing "probable cause" in the criminal context advises that the term must be "defined in terms of facts and circumstances `sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). Moreover, the Supreme Court noted that "[t]he rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating [ ] often opposing interests." Id. at 112, 95 S.Ct. 854 (quoting Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Thus, the inquiry is fact-based, flexible, practical, and nontechnical. Arizona additionally requires that "finding[s] of probable cause shall be based on substantial evidence." See Ariz. R.Crim. P. 5.4(c).
¶ 28 This court has applied probable cause in at least one reported civil case. See Hockett v. City of Tucson, 139 Ariz. 317, 320, 678 P.2d 502, 505 (App.1983). That case, however, was a malicious prosecution case based upon a criminal cause of action. See id. In Hockett, this court defined probable cause as "a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent [person] in believing the accused is guilty of the offense (citations omitted). . . . The test generally applied is: upon the appearances presented to the defendant, would a reasonably prudent [person] have instituted or continued the proceeding?" Id. at 320, 678 P.2d at 505 (quoting McClinton v. Rice, 76 Ariz. 358, 367, 265 P.2d 425, 431 (1953)).
¶ 29 These pronouncements guide our determination that probable cause, as used in A.R.S. section 14-2517, requires evidence sufficient to warrant a reasonably prudent person in believing that the will is invalid. Like its criminal counterpart, probable cause is intended to be a "practical, nontechnical conception."
¶ 30 While the ultimate determination of probable cause is a legal issue, which we review de novo, see State v. Buccini, 167 Ariz. 550, 555-56, 810 P.2d 178, 183-84 (1991); Hockett, 139 Ariz. at 320, 678 P.2d at 505, it is intensely fact-based, and we must defer to the trial court's superior opportunity to view the witnesses and evaluate the evidence in determining those facts. See Ariz. R. Civ. P. 52(a).[7] While we defer as to facts, we do not defer on the ultimate conclusion to be drawn from the facts. See Buccini, 167 Ariz. at 555-56, 810 P.2d at 183-84.
*986 ¶ 31 In this case, Shumway executed a will that Rodriguez had prepared, a will that bequeathed to Rodriguez twenty-five percent of Shumway's estate. Although execution of the will was part of a process that began weeks earlier, Shumway executed the final will while in bed in the hospital, just six days before he died. Indeed, the daughters note, had Rodriguez been an attorney who drafted a will provision that gifted to herself a significant portion of the estate, the gift would presumptively be invalid and might violate the ethical rules. See Ariz. R. Prof. Conduct ER 1.8(c),[8]contained in Ariz. R.S.Ct. 42; see also In re Guardianship of Chandos, 18 Ariz.App. 583, 586, 504 P.2d 524, 527 (1972) (de facto guardian may not profit from ward's estate). From the daughters' perspective, these facts might seem to suffice to provide probable cause for challenging the will. And if this were all the evidence before the trial court, we might agree.
¶ 32 But there was more known to the trial court. The evidence showed that the daughters knew or should have known that a will drafted several years earlier left the estate to Shumway's brother, and left his daughters nothing but a token ten-dollar bequest. The evidence further showed that the will drafted just days before the final will entitled the four daughters to share only one-fourth of the estate; they benefitted by receiving fifty percent in the final version, which was modified at Shumway's direction and signed a few days later. The trial court also was convinced by clear and convincing evidence that Shumway was of sound mind and clearly competent to direct the disposition of his estate, a finding that the daughters have not challenged on appeal. The court additionally heard persuasive evidence that the daughters were not close to their father; it may have found that Appellants failed to make a reasonable inquiry as to their father's mental state before instituting the suit. Had they done so, they would have known that he wished to dispose of this estate largely to others and was fully competent to do so. Finally, the record shows that Gavette filed a petition for appointment as personal representative of her father's intestate estate, even though she knew of the existence of the will at issue in this case and its predecessor.
¶ 33 While the circumstances regarding the will might give rise to a good faith belief that the decedent's will was overborne,[9] the trial court found the will contest unreasonable in the circumstances. It determined that Gavette and Cole had not met their burden of presenting substantial evidence that probable cause existed to challenge the willthat is, they did not establish to the court's satisfaction that reasonably prudent persons would have believed that the will was invalid. In Hockett's terminology, the trial judge was not persuaded that "upon the appearances, ... a reasonably prudent [person would] have instituted or continued the proceeding." 139 Ariz. at 320, 678 P.2d at 505.
¶ 34 Based on the facts in the record, we affirm the trial court's ruling on the ultimate legal issue, the probable cause determination. In doing so, we note that the will contest in this case did precisely what a forfeiture clause is designed to prevent: it depleted the assets of the estate for those legitimately entitled to receive them.
D. Attorneys' Fees
¶ 35 Rodriguez requests attorneys' fees incurred in this litigation from Gavette personally pursuant to A.R.S. section 14-1106 (1995) and, in the alternative, from the estate pursuant to A.R.S. section 14-3720 (1995), which allows an award of fees to a personal *987 representative who defends a will in good faith. However, because the trial court has not yet granted or denied the requests for fees incurred below, we will not review the requests or award fees now.
¶ 36 Rodriguez also requests fees on appeal. We conclude that Rodriguez has defended the will in good faith in this appeal. Therefore, to the extent that the trial court does not award fees to Rodriguez from Gavette personally, she is entitled to reimbursement from the estate, pursuant to section 14-3720, for fees incurred on appeal.

CONCLUSION
¶ 37 We affirm the trial court's rulings upholding Shumway's June 26, 1997 will and enforcing the will's penalty clause. We remand to the trial court for consideration of any remaining issues, including attorneys' fees.
CONCURRING: WILLIAM F. GARBARINO, Presiding Judge.
EHRLICH, Judge, concurring in part, dissenting in part.
¶ 38 I do not join the majority in its rush to address the issue whether Adelida Vega Rodriguez engaged in the unauthorized practice of law. First, as the majority recognizes, the issue was raised through an untimely and inappropriate motion to strike. Second, as the majority also acknowledges, the record on appeal is incomplete; the trial court made no findings of fact, and we have no record of the essential proceeding. While we necessarily assume that the trial court made the requisite factual findings in support of its ruling, an appellate court that admits that the record is incomplete on a given point should be hesitant to declare, as does the majority, that the trial evidence is sufficient to sustain the ruling. For example, on this incomplete record, the majority asserts that Ms. Vega Rodriguez could not have advised Ralph Shumway on the selection of the proper form because the computer program used by Ms. Vega Rodriguez did not allow options. However, we know nothing regarding the choice of the underlying program itself, nor do we know whether the selected program's choice of questions and answers was so clear as to involve no discretion but, rather, only a ministerial execution on the part of Ms. Vega Rodriguez. Because it is incomplete, the record does not support the majority's assertion that the trial court "implicitly found" that "all that Rodriguez did in this case" was to assist a person who was "mentally competent yet legally blind." This is pivotal in a case in which the personal representative is arguing the inherent conflict of the document preparer being a beneficiary, a conflict the majority concedes. See Ariz. R. Prof. Conduct 1.8(c) (prohibiting a lawyer from drafting a will in which a substantial gift is given the lawyer); In re Estate of Marks, 91 Wash.App. 325, 957 P.2d 235, 241 (1998); In re Guardianship of Chandos, 18 Ariz.App. 583, 586, 504 P.2d 524, 527 (1972). It certainly does not support a judicial declaration that a contrary holding would be "an unfortunate result."
¶ 39 Additionally, I would hold that probable cause existed to contest the will. Just six days before Mr. Shumway's death, in his hospital room, Ms. Vega Rodriguez prepared a will declaring that she would receive one-quarter of Mr. Shumway's estate. While I recognize this court's deference to the trial court's factual evaluations, the ultimate determination is a legal one, and I do not doubt that, in the circumstances of this case, the personal representative reasonably believed that the will was invalid.
¶ 40 Further, the majority has made it virtually impossible for a challenger to show that probable cause existed to contest the validity of the will whenever, with the clarity of hindsight, the trial court finds by clear and convincing evidence that the decedent had not been unduly influenced. Probable cause to initiate litigation is a resolution that must be based upon facts known at the outset. The majority has erroneously focused on facts accepted by the trial court after a full development of the record and not upon whether a reasonable person in the challenger's position at the time the lawsuit was instituted would have had probable cause for concluding as she did. It thus has set up an infeasible standard, and, in so doing, has denied a meaningful review to the personal *988 representative. By changing the operation of Arizona Revised Statutes Annotated section 14-2517, the majority has placed an insurmountable hurdle in the path of future wronged beneficiaries.
NOTES
[1] Gavette has not appealed this finding.
[2] We note two other problems with the motion to strike: First, Gavette filed the motion to strike six months after she filed her response to Rodriguez's petition for formal probate, and therefore the motion was untimely. See Rule 12(g) (motion to strike must be made before responsive pleading). Second, Rule 12 allows the striking of a pleading or portion of a pleading. A will is not a pleading and therefore is not covered by the rule.
[3] Although, at Shumway's insistence, Rodriguez arranged for the execution of the will and procured the witnesses, we do not believe these actions required legal skill.
[4] Gavette attempts to heighten the standard of review by asserting that, because this is a will contest, we must "closely scrutinize" the sufficiency of the evidence relating to undue influence. See In re Estate of Thorpe, 152 Ariz. 341, 343-44, 732 P.2d 571, 573-74 (App. 1986). Rodriguez argues that the "close scrutiny" standard applies only to a finding that a will is invalid, because policy favors testacy and wills should not lightly be set aside. See In re Walter's Estate, 77 Ariz. 122, 125, 267 P.2d 896, 898-99 (1954). We agree with Gavette that Arizona cases require careful scrutiny of evidence in will contests. No matter how closely we review the evidence in this case, however, it supports the trial court's decision.
[5] Arizona's provision parallels Uniform Probate Code section 3-905 and Restatement (Second) of Property, Donative Transfers section 9.1 (1983), both of which invalidate forfeiture clauses if probable cause exists for contesting the will. See also Annot., Validity and Enforceability of Provision of Will or Trust Instrument for Forfeiture or Reduction of Share of Contesting Beneficiary, 23 A.L.R.4th 369, 376-81 (1983).
[6] Although the trial court did not make a specific probable cause finding in its order, "[t]rial judges are presumed to know the law and to apply it in making their decisions." State v. Alvarado, 178 Ariz. 539, 543, 875 P.2d 198, 202 (App.1994) (quoting Walton v. Arizona, 497 U.S. 639, 653, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)). That presumption is appropriate in this case because Rodriguez brought the penalty clause provision, A.R.S. § 14-2517, to the court's attention in her petition to enforce the clause. Thus, by enforcing the penalty clause, the trial court implicitly found that Gavette and Cole lacked probable cause to challenge the will.
[7] The appellant did not request findings of fact. Thus we must assume that the trial court found those facts necessary to support its ruling. See Stevenson, 132 Ariz. at 46, 643 P.2d at 1016.
[8] That section reads as follows:

(c) A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.
[9] Probable cause differs from good faith. If good faith alone were the standard, the actual state of affairs would matter little; the inquiry would focus on the will contestant's honest belief in the will's invalidity. See, e.g., Winningham v. Winningham, 966 S.W.2d 48, 52-53 (Tenn.1998). Probable cause, the standard Arizona's legislature has adopted, requires an independent, objective determination of whether reasonable persons in appellants' situation would have thought that their father's will was invalid.