9 P.3d 1062

**In the Matter of the ESTATE OF Ralph Vincill SHUMWAY, Deceased.**

**Adelida Vega Rodriguez, Petitioner–Appellee,**

v.

**Virginia Gavette, Personal Representative– Appellant.**

**No. CV–99–0391–PR.**

Supreme Court of Arizona, En Banc.

Sept. 15, 2000.

Ronald G. Cooley, Sun City, and John R. Coll, Phoenix, for Adelida Vega Rodriguez.

Jennings, Strouss & Salmon, P.L.C. By David Brnilovich, Peoria, David B. Earl and Stacey A. Dowdell, Phoenix, for Virginia Gavette.

## OPINION

FELDMAN, Justice.

¶1 We granted review to determine whether the penalty, or so-called *in terro-*

*rem,* clause in a will should be enforced against those who contest the will. Per A.R.S. § 14–2517, the penalty clause is unenforceable if probable cause existed to contest the will. Under the facts of this case of first impression and according to what we conclude to be the proper definition of probable cause, we find that the penalty clause should not be enforced. We thus vacate part of the court of appeals' opinion, reverse the portion of the trial court's judgment dealing with enforcement of the penalty clause, and remand to the trial court for further action consistent with this opinion.

¶ 2 We have jurisdiction pursuant to Arizona Constitution article VI, section 5(3).

## FACTS AND PROCEDURAL HISTORY

¶ 3 Ralph V. Shumway (Decedent) executed a will six days before his death. The will had been prepared at his request by his helper and bookkeeper, Adelida Rodriguez. The will nominated Rodriguez, who was neither related to Decedent nor a beneficiary under his prior will, as personal representative and left her twenty-five percent of Decedent's estate. Decedent was survived by a brother and four children. Virginia Gavette, one of his daughters, filed a petition for appointment as personal representative; the other survivors agreed to that appointment. After Gavette's appointment, Rodriguez filed an objection, offering the 1997 will for probate. Gavette contested that will, alleging undue influence and unauthorized practice of law by Rodriguez. Rodriguez was not an attorney but held Decedent's power of attorney. She occupied a confidential relationship with Decedent, thus raising a presumption of undue influence because she benefitted from the will. *See In re Estate of Pitt,* 88 Ariz. 312, 317, 356 P.2d 408, 411 (1960); *In re O'Connor's Estate,* 74 Ariz. 248, 259–60, 246 P.2d 1063, 1071 (1952). The trial judge

found that the will was valid; that Rodriguez proved by clear and convincing evidence that she had not exerted undue influence; and that Rodriguez had not engaged in the unauthorized practice of law in assisting in preparation of the will, using a computer program, and reading questions and recording answers given by Decedent, who was severely visually impaired. The judge also enforced a penalty clause contained in the will,[1] resulting in forfeiture of the portion of the estate bequeathed to Gavette and another daughter, Nikki Cole.[2] Because A.R.S. § 14–2517 prohibits penalizing a contestant when there was probable cause for the contest, by enforcing the penalty clause the trial judge implicitly found no probable cause to challenge the will.

¶ 4 The court of appeals affirmed the judgment, with a majority of the panel believing the evidence supported the trial judge's conclusions on enforcement of the penalty clause. *In re Estate of Shumway,* 197 Ariz. 57, 66 ¶¶ 32–34, 3 P.3d 977, 986 ¶¶ 32–34 (App.1999). In dissent, Judge Ehrlich found probable cause existed to contest the will and the forfeiture clause should therefore not have been enforced. *Id.* at 67–68 ¶ 39–40, 3 P.3d at 987–88 ¶ 39–40. The court also held that the evidence supported the trial judge's conclusion that the will was not the product of undue influence. *Id.* at 64 ¶ 22, 3 P.3d at 984 ¶ 22. The court of appeals further found the will was not the result of the unauthorized practice of law because Rodriguez acted only as a scribe for Decedent, filling in his answers to the questions in the computer program. *Id.* at 62 ¶¶ 11–12, 3 P.3d at 982 ¶ 11–12.

¶ 5 The only issue on which we granted review was whether a legal presumption of undue influence is sufficient probable cause under A.R.S. § 14–2517. We requested that supplemental briefs be directed to the question of the appropriate standard to be applied

---

1. The clause read as follows:

 If any beneficiary under this Will in any manner, directly or indirectly, contests or attacks this Will or any of its provisions, any gift or other provision I have made to or for that person under this Will is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary had predeceased me without issue.

June 26, 1997 Last Will and Testament of: Ralph V. Shumway, Clause 11th, Appellant's Opening Brief Appendix A.

2. Cole testified at trial but technically was not a contestant. The parties did not raise and we do not address the propriety of enforcing a penalty clause against a beneficiary who was only a witness at trial.

when determining the existence of probable cause under the statute.

## DISCUSSION

### A. The statute

¶ 6 There is a significant divergence of views as to whether an *in terrorem* clause is enforceable when a contest is brought in good faith. *See* Annotation, *Validity and Enforceability of Provision of Will or Trust Instrument for Forfeiture or Reduction of Share of Contesting Beneficiary,* 23 A.L.R.4th 369, 376–81 (1983). We need not concern ourselves with this because our statute provides:

> A provision in a will purporting to penalize an interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists for that action.

A.R.S. § 14–2517 (1995). The court of appeals' opinion is the first published decision to construe this statute. The statute is based on Uniform Probate Code § 2–517. A similar discussion of enforceability is given in the RESTATEMENT OF PROPERTY, which a majority of jurisdictions supports:[3]

> An otherwise effective provision in a will or other donative transfer, which is designed to prevent the acquisition or retention of an interest in property in the event there is a contest of the validity of the document transferring the interest or an attack on a particular provision of the document, is valid, unless there was probable cause for making the contest or attack.

RESTATEMENT (SECOND) OF PROPERTY: Donative Transfers § 9.1 (1983) (hereinafter RE-STATEMENT).

¶ 7 The law favors testamentary disposition of property. *See O'Connor's Estate,* 74 Ariz. at 261, 246 P.2d at 1071–72. One stated purpose of Arizona's probate procedure is "to discover and make effective the intent of a decedent in distribution of his property." A.R.S. § 14–1102(B)(2). Once the testator's intent is known, doubts should be resolved on the side of carrying out the testator's intent. *See In re Walters' Estate,*

77 Ariz. 122, 125–26, 267 P.2d 896, 898–99 (1954). The rationale behind the rule on enforceability of penalty clauses in wills balances several policy factors. Public policy reasons to support penalty clauses include preserving the transferor's donative intent, avoiding waste of the estate in litigation, and avoiding use of a will contest to coerce a more favorable settlement to a dissatisfied beneficiary. *See* RESTATEMENT § 9.1 cmt. a. These must be balanced with the public policy interests of allowing access to the courts to prevent probate of wills procured by or resulting from fraud, undue influence, lack of capacity, improper execution, forgery, or subsequent revocation by a later document. *See id.* Thus, the Uniform Code, the RESTATE-MENT, and the Arizona statute all refer to probable cause as the key issue in deciding whether to enforce a penalty clause.

¶ 8 The court of appeals construed the statutory language to mean that probable cause would exist if a "reasonably prudent person ... [would believe] that the will is invalid." *Shumway,* 197 Ariz. at 65 ¶ 29, 3 P.3d at 985 ¶ 29. The dissent believed, however, that the majority "erroneously focused on facts accepted by the trial court after a full development of the record and not upon whether a reasonable person in the challenger's position at the time the lawsuit was instituted would have had probable cause for concluding as she did." *Id.* at 67 ¶ 40, 3 P.3d at 987 ¶ 40.

¶ 9 In malicious prosecution and false imprisonment cases, whether probable cause existed in a particular case is a question of law to be determined by the court after the factual basis is determined by the trier of fact. *See Hockett v. City of Tucson,* 139 Ariz. 317, 320, 678 P.2d 502, 505 (App. 1983); *Watzek v. Walker,* 14 Ariz.App. 545, 548, 485 P.2d 3, 6 (1971). We thus review the legal issues de novo, applying the appropriate legal standard to the facts found by the trier. *See State v. Buccini,* 167 Ariz. 550, 555–56, 810 P.2d 178, 183–84 (1991) (probable cause for issuance of search warrant). Although the present case falls within a different area of the law, we believe this *procedure* is nevertheless appropriate.

---

**3.** *See* RESTATEMENT (SECOND) OF PROPERTY: Donative Transfers § 9.1 Reporter's Note (1983).

## B. Probable cause—the standard

¶ 10 We first resolve the standard of probable cause to be applied under the statute. The trial judge did not make a specific probable cause finding. *See Shumway*, 197 Ariz. at 65 ¶ 24 n. 6, 3 P.3d at 985 ¶ 24 n. 6. The judge merely acknowledged that the will had been challenged and ruled that the penalty clause should be enforced. The court of appeals stated that "the circumstances regarding the will might give rise to a good faith belief that the decedent's will was overborne." *Id.* at 66 ¶ 33, 3 P.3d at 986 ¶ 33. But the court then differentiated this "good faith belief" from "probable cause" by saying that "[p]robable cause ... requires an independent, objective determination of whether reasonable persons in appellants' situation would have thought that their father's will was invalid." *Id.* at 66 ¶ 33 n. 9, 3 P.3d at 986 ¶ 33 n. 9. The court concluded that Gavette did not establish to the trial judge's satisfaction that "a reasonably prudent [person would] have instituted or continued the proceeding." *Id.* at 66 ¶ 33, 3 P.3d at 986 ¶ 33 (quoting *Hockett*, 139 Ariz. at 320, 678 P.2d at 505).

¶ 11 In articulating these tests, the court of appeals relied on definitions of probable cause used in criminal cases and in civil cases dealing with false arrest or malicious prosecution. *See id.* at 65 ¶¶ 27–28, 3 P.3d at 985 ¶¶ 27–28. It did so in part because "technical words and phrases that 'have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning.'" *Id.* at 65 ¶ 26, 3 P.3d at 985 ¶ 26 (quoting A.R.S. § 1–213). We have little quarrel with this principle or with the tests laid down by the court of appeals, but we believe will contests are somewhat *sui generis*, influenced as they are by the conflicting public policies described above. Thus, we prefer a standard specifically applicable to will contests.

¶ 12 Moreover, in reaching its conclusion, the court cited evidence developed *at trial* as part of the support for the trial judge's finding the will contest unreasonable, including the judge's ultimate conclusion that Decedent was of sound mind and competent to direct disposition of his estate. *Id.* at 66

¶ 32, 3 P.3d at 986 ¶ 32. Obviously, this result was not known by Gavette when she filed the contest, and significant authority supports the concept that it is the information known at the time of filing that is significant. *See, e.g., In re Estate of Peppler*, 971 P.2d 694, 697 (Colo.App.1998); *In re Estate of Campbell*, 19 Kan.App.2d 795, 876 P.2d 212, 216 (1994); *Hannam v. Brown*, 114 Nev. 350, 956 P.2d 794, 799 (1998); *Winningham v. Winningham*, 966 S.W.2d 48, 52–53 (Tenn. 1998); Annotation, *supra*, 23 A.L.R.4th at 376–81. This authority includes the RESTATEMENT, in which "probable cause" is defined as

> the existence, *at the time of the initiation of the proceeding*, of evidence which would lead a *reasonable person, properly informed and advised*, to conclude that there is a *substantial likelihood that the contest or attack will be successful*. The evidence needed ... should be less where there is strong public policy supporting the legal ground of the contest or attack.... A factor which bears on the existence of probable cause is that the beneficiary *relied upon the advice of disinterested counsel sought in good faith after a full disclosure of the facts*.

RESTATEMENT § 9.1 cmt. j (emphasis added). Other jurisdictions have adopted the RESTATEMENT's definition of probable cause. *See Peppler*, 971 P.2d at 697; *Campbell*, 876 P.2d at 216; *Hannam*, 956 P.2d at 798.

¶ 13 We believe the RESTATEMENT's standard for probable cause properly balances the conflicting policy interests and therefore adopt it over the other potential standards, including that framed by the court of appeals and those presented by the parties, which included the colorable claim and Rule 11 standards. We include the good faith element rejected by the court of appeals. *See Shumway*, 197 Ariz. at 66 ¶ 33 n. 9, 3 P.3d at 986 ¶ 33 n. 9. While we agree that good faith is not the sole test, we believe subjective belief in the basis of the challenge is part of the required belief in the substantial likelihood of success. *See, e.g., Winningham*, 966 S.W.2d at 52. We will apply the RESTATEMENT test flexibly, especially when strong policy supports grounds for challenge—as in

the case of suspected undue influence, the principal ground for contest in the present case. The RESTATEMENT's standard of a "reasonable person, properly informed and advised" who concludes there is a substantial likelihood of success in the contest is, of course, a question initially for the trial court. In addressing that question, the trial judge should, as the RESTATEMENT requires, refer to the evidence known at the time the contest was initiated.

### C. Whether probable cause existed in the present case

 ¶ 14 Penalty clauses work a forfeiture, which is disfavored in the law. *See, e.g., Schaeffer v. Chapman*, 176 Ariz. 326, 329, 861 P.2d 611, 614 (1993) (forfeiture clause in a contract); RESTATEMENT § 9.1 Reporter's Note 7; Annotation, *What Constitutes Contest or Attempt to Defeat Will Within Provision Thereof Forfeiting Share of Contesting Beneficiary*, 3 A.L.R.5th 590, 611 (1992). Because of this, the statute should be liberally construed, especially when the grounds include such matters as undue influence. The court of appeals presumed the judge knew and applied the appropriate law when making her decision. *Shumway*, 197 Ariz. at 64–65 ¶ 24 n. 6, 3 P.3d at 984–85 ¶ 24 n. 6. We might indulge the same presumption, but the absence of findings and lack of any comment or explanation in the trial judge's orders leaves us not only to speculate as to the standard she applied in a case of first impression, but also to our own devices in attempting to find support for her unexpressed but implicit conclusion that there was no probable cause.

 ¶ 15 Prior to filing the present action, Gavette obtained a written opinion by Decedent's doctor that he was "borderline competent" during the last week of his life, that he showed "marked deterioration," was "waxing and waning," and that by June 30 (four days after the will was signed), he "clearly was incompetent." *See* Letter by Dr. Michael S. Roberts, dated July 3, 1997, Exhibit No. 10 to Statement of Facts in Support of Virginia Gavette's Motion for Summary Judgment

(filed February 17, 1998). One important factor used to determine whether the will contest was filed with probable cause is that the beneficiaries relied on the advice of disinterested counsel, sought in good faith after a full disclosure of the facts. *See Peppler*, 971 P.2d at 697 (citing RESTATEMENT § 9.1 cmt. j). The attorney advised Gavette of the legal presumption of undue influence when one who occupies a confidential relationship to a decedent is active in procuring the execution of the will and is one of the principal beneficiaries. *See In re Estate of Harber*, 102 Ariz. 285, 289, 428 P.2d 662, 666 (1967).

 ¶ 16 The facts also showed that Rodriguez, as she concedes, had a confidential relationship with Decedent. *See Shumway*, 197 Ariz. at 62 ¶ 14, 3 P.3d at 982 ¶ 14. "[W]here a confidential relationship is shown the presumption of invalidity can be overcome only by clear and convincing evidence that the transaction was fair and voluntary." *Stewart v. Woodruff*, 19 Ariz.App. 190, 194, 505 P.2d 1081, 1085 (1973). This is a difficult standard of proof. Though Rodriguez met it to the trial judge's satisfaction after presentation of all evidence, when Gavette filed the contest she could reasonably have questioned Rodriguez' ability to do so, given the other circumstances surrounding execution of the will.

¶ 17 These circumstances include the following: Rodriguez helped Decedent prepare his will with computer software she had previously purchased; she was named the personal representative; and she arranged for Decedent to sign the will in the hospital six days before his death, with two of her relatives as the only witnesses. Rodriguez was not a beneficiary under Decedent's prior will and was not related to him, but she would inherit twenty-five percent of his estate under the will she prepared. After Decedent's death, Rodriguez transferred to her account $13,000 from Decedent's bank account and a $5,000 certificate of deposit. She had access as a beneficiary of these joint accounts.[4]

¶ 18 Decedent was legally blind, and Gavette may reasonably have believed that he

---

4. At trial, Rodriguez testified that Decedent intended that these funds be disbursed under the

terms of the will, but they had thus far not been so disbursed.

did not truly know what the will said. A previous draft had been prepared and read in her presence on June 25, the day before the contested will was executed. Decedent seemed to be asleep during this reading and did not agree that the will expressed his testamentary desires. The will was revised overnight and then read only in the presence of Rodriguez' relatives. The person who notarized the will's signatures did not witness its reading. Cole said Decedent could not remember things when she was talking with him prior to Rodriguez' arrival on the day the will was executed. It is also unclear whether Decedent intended to include the penalty clause. The software program used by Rodriguez did not allow the user to pick and choose which clauses were desired, so the penalty clause very well may have been included automatically. In fact, Decedent may not have known it was there. Thus, whether the will expressed Decedent's testamentary intent was in question. It is therefore impossible to conclude as a matter of law that a reasonable person would not have believed there was a substantial likelihood of success in contesting this will.

¶ 19 Rodriguez argues that Decedent was not close to Gavette, that he was a very strong-willed person, and that she provided clear and convincing evidence that he was competent to execute this will. However, the definition of probable cause does not require certainty of success. The question is whether Gavette had enough facts to establish probable cause at the time the contest was filed. Simply because the trial judge concluded there was no undue influence does not mean no probable cause existed to contest the will. If that were the case, the only contestants to a will would be either those who were absolutely certain of the will's invalidity or those who had little or nothing to lose should the contest fail. Any person who had a substantial interest under a will would face the choice of letting a questionable will stand or forfeiting his or her share of the estate should the challenge fail.

¶ 20 In light of the undue influence challenge, including the presumption applicable in this case and the public policy militating against forfeiture and favoring access to the courts, the factors that weighed against a probable cause finding do not overcome the information known to Gavette at the time the contest was filed. Based on the circumstances surrounding the drafting and execution of this will, the doctor's concern regarding Decedent's competence, the lack of clarity of Decedent's intent, the presumption of undue influence, and the policy of Arizona law on this subject, we conclude there was probable cause to contest the will. In reaching this conclusion, we do not resolve disputed factual issues. There is no dispute concerning the evidence Gavette knew at the time the contest was filed.

¶ 21 Without the benefit of any findings from the trial judge or any information on the standard she applied, we must ourselves solve the legal question as to the existence of probable cause. We have not been asked to and do not disturb the trial judge's ultimate factual conclusion that the will was valid. Though the presumption of undue influence by Rodriguez was eventually overcome, at the time of filing the contest, Gavette, as a reasonable person properly informed and advised, had grounds to believe there was a substantial likelihood of success—probable cause to contest the will. After full development of the facts at trial, hindsight cannot be utilized to later justify a finding that the contest was unreasonable. The RESTATE-MENT provides an example, very similar to the case at hand:

O, by an otherwise effective will, gives one-half of his property to the person who served as his nurse during the last three years of his life. His will gave the other one-half of his property to his only son. The will was made one year before O died. During the last three years of O's life, he was mentally incompetent most of the time but did have some lucid intervals. The will contained a provision that if his son contested the will or any provision thereof, all of the property subject to disposition by O's will would go to the nurse. The son contested the will on the ground that his father did not have the mental capacity to make a will. His contest failed because it was determined that the will was executed during a lucid interval of his father. The conclusion is justified that there was prob-

able cause for the contest and thus the son's interest under the will is not forfeited.

RESTATEMENT § 9.1 cmt. j, illus. 10.

¶ 22 We reach a similar conclusion here. Accordingly, Gavette's interests under the will are not forfeited.

## CONCLUSION

¶ 23 The implicit finding by the trial judge of no probable cause for this will contest is unsupported and must be set aside. Thus the court of appeals' opinion is vacated insofar as it deals with the penalty clause, the portion of the trial court judgment permitting its enforcement is reversed, and the case is remanded to the trial court for further action consistent with this opinion.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, FREDERICK J. MARTONE, Justice, RUTH V. McGREGOR, Justice, and J. WILLIAM BRAMMER, Jr., Judge, concur.

Vice Chief Justice CHARLES E. JONES recused himself. Pursuant to Arizona Constitution article VI, section 3, the Honorable J. WILLIAM BRAMMER Jr., Judge of the Court of Appeals, Division Two, was designated to sit in his stead.