286 P.3d 1089

**In the Matter of the ESTATE OF Thomas J. STEWART, Deceased.**

**Sean Stewart; Stacie Ann Stewart; Andrea Crystal Stewart; Aaron Stewart, Appellees,**

v.

**Slade Stewart and Dan Kourkoumelis, as Co–Personal Representatives of the Estate of Thomas J. Stewart; and as Co–Trustees of the Restatement of the Thomas J. Stewart Revocable Living Trust, Respondents/Appellants.**

**No. 1 CA–CV 11–0499.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 27, 2012.

As Amended Sept. 28 and Oct. 11, 2012.

As Amended on Reconsideration Nov. 21, 2012.

Stinson Morrison Hecker LLP by Michael Charles Manning, James E. Holland, Phoenix, Attorneys for Appellee Aaron Stewart.

Tiffany & Bosco PA by Richard G. Himelrick, David L. Case, Phoenix, and McDermott Will & Emery LLP by David A. Baker, pro hac vice, Chicago, IL, Attorneys for Respondents/Appellants.

## OPINION

TIMMER, Presiding Judge.

¶ 1 In this will contest case, we consider whether the superior court properly invalidated on statutory and public policy grounds *in terrorem* clauses of a will and living trust that serve to disinherit beneficiaries who either challenge the enforceability of testamentary documents or cooperate in any such challenge. For the following reasons, we hold that the clauses are enforceable unless a beneficiary had probable cause to contest the testamentary documents. We therefore reverse the portion of the judgment invalidating the *in terrorem* clauses but otherwise affirm.

---

1. The *in terrorem* clause in the Will provides in full as follows:

8.01 **In Terrorem Clause.** To the maximum extent applicable state law permits, if any person should take any one or more of the actions described in this paragraph, either directly or indirectly, then thereafter for all purposes the provisions of this will shall be construed and my estate shall be disposed of as though such person had predeceased me, effective as of the date such action is taken. This paragraph shall take effect if any person identified in the preceding sentence:

(a) Contests my will or any codicil thereto, any exercise of a power of appointment by me, either during life or at death, or any transfer of property from any person to a trust identified in the immediately following subparagraph;

(b) Contests my revocable trust or any other trust created by me either during life or at death and whether by way of grant, exercise of power of appointment or otherwise, or any amendment to any of the foregoing;

(c) Contests any discretionary action taken by the personal representative or by the trustee or the adviser of my revocable trust with respect to

## BACKGROUND

¶ 2 On February 14, 2010, Thomas J. Stewart ("Thomas") died in an accident along with his wife and their minor child. Thomas is survived by five adult children.

¶ 3 Three years prior to his death, Thomas executed a will ("Will") and a living trust ("Trust"), which amended a prior trust. The only beneficiary of the Will is the Trust, and the Will explicitly revoked any previous testamentary instruments. Unlike the prior trust, both the Will and the Trust explicitly exclude one of Thomas's sons, Sean Stewart ("Sean"), from receiving any interest in Thomas's estate.

¶ 4 Both the Will and the Trust contain *in terrorem* clauses providing, in relevant part, that if a beneficiary contests any portion of the Will or Trust, any discretionary act of the personal representative or trustee, or Thomas's testamentary or mental capacity, that beneficiary will forfeit his or her beneficial interest. The forfeiture provisions also apply if a beneficiary "cooperates or aids" another in making any such contest.[1]

¶ 5 Upon Thomas's death, Sean learned he had been disinherited and then filed a petition for formal testacy pursuant to Arizona Revised Statutes ("A.R.S.") section 14–3401 seeking to invalidate the Will on a number of

the allocation or distribution of trust property at my death under my revocable trust, the sale or disposition of any Family Business (as defined in my revocable trust), or the allocation of estate charges against any trust property or beneficiary;

(d) Seeks to obtain an adjudication in any court with respect to my testamentary capacity, capacity to enter into binding contracts, or mental capacity in general at any time; or

(e) Cooperates or aids in any action described in the preceding provisions of this paragraph with any other person, regardless of whether that other person is himself or herself subject to this article.

8.02 **Interpretation.** For purposes of this article, a person shall be deemed to contest an instrument, action, or transaction if that person takes any action seeking to invalidate, nullify, set aside, render unenforceable, or otherwise avoid the effect of such instrument, action or transaction. This article shall take effect regardless of whether any such contest is made in good faith or is ultimately successful. The personal representative is authorized to defend any contest by any person at the expense of my estate.

The *in terrorem* clause in the Trust is substantively identical.

grounds. He subsequently filed civil complaints seeking both to invalidate the Trust and to recover damages against his brother, Slade Stewart ("Slade"), a co-personal representative of Thomas's estate. The superior court consolidated these cases.

¶ 6 Sean next filed a motion to invalidate the *in terrorem* clauses, arguing they impeded his discovery efforts by prohibiting beneficiaries from "cooperating or aiding" him in contesting the Will and Trust. After briefing and oral argument, the court granted the motion and ruled "the clause is unenforceable." The court later clarified that its ruling applied to the Will, Trust, and any other testamentary document.

¶ 7 After Sean settled his claims against Slade and Thomas's estate, the court approved the settlement and signed a joint proposed form of judgment. At the urging of beneficiaries Stacie Stewart and Andrea Stewart, however, the court refused to vacate its rulings regarding the *in terrorem* clauses as moot and instead reasserted these rulings in the judgment. Slade and his co-personal representative, Dan Kourkoumelis, timely appealed. Appellants do not contest dismissal of Sean's petition but challenge the portion of the judgment ruling that the *in terrorem* clauses are invalid.[2]

### DISCUSSION

#### I. Standing

■ ¶ 8 Appellants first argue the superior court erred by granting Sean's motion because Sean lacked standing to challenge the *in terrorem* clauses. We review whether Sean had standing de novo as an issue of law. *City of Tucson v. Pima County,* 199 Ariz. 509, 514, ¶ 10, 19 P.3d 650, 655 (App.2001).

■ ¶ 9 Because Arizona's constitution has no counterpart to the federal constitution's "case or controversy" requirement, standing is not constitutionally required to confer jurisdiction. *Armory Park Neighbor-hood Ass'n v. Episcopal Cmty. Servs. in Ariz.,* 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985). Rather, standing is a principle applied by our courts as a matter of judicial restraint. *Id.* As our supreme court has explained:

> We impose that restraint to insure that our courts do not issue mere advisory opinions, that the case is not moot and that the issues will be fully developed by true adversaries. Our court of appeals has explained that these considerations require at a minimum that each party possess an interest in the outcome.

*Id.* Consequently, standing to bring an action requires the plaintiff to "allege a distinct and palpable injury." *Sears v. Hull,* 192 Ariz. 65, 69, ¶ 16, 961 P.2d 1013, 1017 (1998).

■ ¶ 10 Appellants contend that because Sean was not a beneficiary under the Will or Trust, the clauses could not affect him, and he therefore had no interest in invalidating them. We disagree. Sean alleged the Will and Trust were products of "Thomas's failed mental health and the undue influence ... Slade exerted over their father." Any formal or informal discovery into the state of Thomas's mental health and Slade's influence over his father prior to execution of the Will and Trust in 2007 would likely involve inquiries made to other family members, some of whom are Trust beneficiaries. Because the *in terrorem* clauses may compel these beneficiaries to refrain from cooperating with Sean, thereby impairing Sean's ability to prosecute his action, Sean adequately alleged injury from enforcement of the clauses. Sean therefore had standing to contest the clauses, and the superior court correctly considered his motion.

#### II. Ripeness

■ ¶ 11 Appellants next argue the superior court erred because the viability of the *in terrorem* clauses is not ripe for adjudication. We review ripeness de novo as an issue

---

**2.** Appellees have not filed an answering brief. Although we could consider this silence a confession of error, we exercise our discretion to consider the merits of the appeal as we recognize that Appellees may have refrained from advocating against enforcement of the *in terrorem* claus-

es for fear these clauses would be invoked against Appellees. *See Nydam v. Crawford,* 181 Ariz. 101, 101, 887 P.2d 631, 631 (App.1994). Appellee Aaron Stewart filed a motion to dismiss this appeal for lack of jurisdiction. By separate order, we deny that motion.

of law. *Safeway Ins. Co. v. Collins*, 192 Ariz. 262, 264, ¶ 9, 963 P.2d 1085, 1087 (App.1998).

¶ 12 Ripeness is closely related to standing in that enforcement of the principle "prevents a court from rendering a premature judgment or opinion on a situation that may never occur." *Winkle v. City of Tucson*, 190 Ariz. 413, 415, 949 P.2d 502, 504 (1997). Appellants contend the court violated this doctrine by entering a ruling in anticipation that a beneficiary may be precluded from inheriting due to enforcement of the clauses—a situation that may never occur. *See Santa Fe Ridge Homeowners' Ass'n v. Bartschi*, 219 Ariz. 391, 397–98, ¶ 22, 199 P.3d 646, 652–53 (App.2008) (noting impropriety of granting anticipatory judgment resolving events that had not yet occurred). We disagree. At the time Sean moved to invalidate the *in terrorem* clauses, he had contested the Will and Trust in a lawsuit and was entitled to conduct discovery to prove his case. The clauses served to deter beneficiaries from cooperating with Sean's discovery efforts. It was not necessary for Appellants to enforce the clauses to make their validity ripe for adjudication; the threat of enforcement as Sean embarked on discovery was sufficient to create an actual controversy.

### III. Validity of *in terrorem* clauses

¶ 13 Appellants next argue the superior court erred by ruling the *in terrorem* clauses violated both A.R.S. § 14–2517 (West 2012)[3] and public policy. We review the enforceability of an *in terrorem* clause de novo as an issue of law. *In re Estate of Shumway*, 198 Ariz. 323, 326, ¶ 9, 9 P.3d 1062, 1065 (2000).

### A. A.R.S. § 14–2517

¶ 14 Section 14–2517 provides:

A provision in a will purporting to penalize an interested person for contesting the will or instituting other proceedings relating to

the estate is unenforceable if probable cause exists for that action.

The superior court ruled § 14–2517 conflicts with the *in terrorem* clauses in the Will and Trust because the clauses are effective "regardless of whether any such contest is made in good faith or is ultimately successful." The court concluded the clauses are facially invalid because the court would have to rewrite the clauses in order to enforce them.[4] Appellants argue the court erred because § 14–2517 neither prohibits *in terrorem* clauses nor requires them to include specific language to be enforceable. Rather, § 14–2517 serves only to prevent enforcement of an *in terrorem* clause when probable cause existed for contesting the validity of a testamentary document.

¶ 15 We are guided by our supreme court's decision in *In re Estate of Shumway*, 198 Ariz. 323, 9 P.3d 1062 (2000), which interpreted and applied § 14–2517 to enforcement of the following *in terrorem* clause:

If any beneficiary under this Will in any manner, directly or indirectly, contests or attacks this Will or any of its provisions, any gift or other provision I have made to or for that person under this Will is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary had predeceased me without issue.

*Id.* at 325 n. 1, ¶ 3, 9 P.3d at 1064 n. 1. The supreme court initially noted the law favors testamentary disposition of property according to the intent of the decedent. *Id.* at 326, ¶ 7, 9 P.3d at 1065. Thus, *in terrorem* clauses are not prohibited as they "preserv[e] the transferor's donative intent, avoid[ ] waste of the estate in litigation, and avoid[ ] use of a will contest to coerce a more favorable settlement to a dissatisfied beneficiary." *Id.* But because public policy also favors court intervention when wills are procured by improper means, our legislature enacted § 14–2517, which mirrors section 2–517 of the Uniform Probate Code, to prohibit enforcement of a

---

3. Absent material revisions after the relevant date, we cite a statute's current version.

4. By its plain language, § 14–2517 applies only to an *in terrorem* clause set forth in a will, and no party offers an argument to the contrary. On

this basis alone, the superior court erred by invalidating the *in terrorem* clause in the Trust as violating § 14–2517. Thus, we address the parties' arguments concerning § 14–2517 only as they apply to the *in terrorem* clause in the Will.

valid *in terrorem* clause when probable cause existed to contest the testamentary document at issue. *Id.* at ¶¶ 6–7.

¶ 16 The court defined "probable cause," in pertinent part, as meaning "the existence, at the time of the initiation of the proceeding, of evidence which would lead a reasonable person, properly informed and advised, to conclude that there is a substantial likelihood that the contest or attack will be successful." *Id.* at 327, ¶ 12, 9 P.3d at 1066 (quoting Restatement (Second) of Property: Donative Transfers ("Restatement") § 9.1 cmt. j (1983)) (emphasis removed). Applying this definition, the *Shumway* court held that the applicable beneficiary did not forfeit her interests under the *in terrorem* clause because she had probable cause to challenge the enforceability of the will. *Id.* at 330, ¶ 22, 9 P.3d at 1069.

¶ 17 Applying *Shumway,* we agree with Appellants the superior court erred by invalidating the *in terrorem* clause in all circumstances rather than only when a beneficiary lacks probable cause to challenge the Will or "institute[es] other proceedings relating to the estate." Section 14–2517 does not require that an *in terrorem* clause contain specific language to be enforceable. And the clause's pronouncement that forfeiture will occur regardless of the beneficiary's good faith or ultimate success does not direct a different outcome than in *Shumway,* as the superior court concluded. Indeed, the clause is effectively no different than the one at issue in *Shumway,* which required forfeiture without apparent regard to a challenging beneficiary's good faith or ultimate success. *Id.* at 325 n. 1, ¶ 3, 9 P.3d at 1064 n. 1. The key consideration under § 14–2517 is whether the beneficiary had probable cause to contest the will or institute other estate-related proceedings. The probable cause determination turns on whether a reasonable person at the time of the challenge would have believed a "substantial likelihood [existed] that the contest or attack will be successful." *Id.* at 327, ¶ 12, 9 P.3d at 1066 (quoting Restatement § 9.1 cmt. j (1983)) (emphasis removed). Whether the beneficiary acted in good faith or ultimately prevailed is not part of the probable-cause inquiry. Therefore, we

reject the superior court's conclusion that the clause necessarily conflicts with § 14–2517.

### B. Public policy

■ ¶ 18 The *in terrorem* clauses in both the Will and the Trust disinherit any beneficiary who "cooperates or aids in any" direct or indirect contest to testamentary documents. The superior court ruled this provision violates public policy because it "encourages perjury by expressly incentivizing a beneficiary with knowledge related to a will contest to lie in order to avoid disinheritance[,] ... undermines the truth seeking purpose of the court, inhibits truthfulness and unreasonably impedes the judicial process."

¶ 19 The record does not support the court's premise that the "no cooperation" part of the *in terrorem* clauses encourages perjury or impedes the judicial process. The court's view necessarily rests on a restrictive interpretation of the clauses to mean beneficiaries forfeit their interests even when subpoenaed to testify in a court proceeding or to provide documentary evidence or when sworn to provide truthful testimony in court. We agree that if the *in terrorem* clauses were interpreted in this manner, they would violate public policy. A better interpretation of the clauses, and one that does not violate public policy, is that beneficiaries forfeit their interests when they urge or *voluntarily* aid a party to contest testamentary documents.[5] This reading is consistent with the express provision of the *in terrorem* clauses that they apply to the maximum extent permitted by state law. *See* Will § 8.01; Trust § 10.01. Such an interpretation also aligns with the Restatement's view of permissible restrictions in an *in terrorem* clause, and we see no language in the clauses suggesting Thomas possessed a different intent. *See* Restatement § 9.1 cmt. f ("[S]uch a restraint is violated when the person restrained voluntarily instigates or aids another person in that person's attempt to contest the will or other donative transfer or to attack particular provisions of it."); *see also Cunningham v. Goettl Air Conditioning, Inc.,* 194 Ariz. 236, 239, ¶ 14, 980 P.2d 489, 492 (1999) (stating Arizona courts are guided by the Re-

---

**5.** We do not define the contours of conduct prohibited by an *in terrorem* clause, as this task is best accomplished by considering the unique

facts of individual cases on appeal. The propriety of any particular conduct in this case is not before us.

statement in the absence of contrary authority). For these reasons, we reject the court's public policy basis for invalidating the *in terrorem* clauses.

¶ 20 In summary, the superior court erred in invalidating the *in terrorem* clauses on their face for statutory and public policy grounds. We therefore reverse the judgment to the extent it invalidates the *in terrorem* clauses in the Will, the Trust, and any other related testamentary documents. In light of our holding, we do not address Appellants' remaining argument concerning the applicability of Delaware law as application of that state's equivalent to A.R.S. § 14–2517 would not alter our disposition of this appeal.

## CONCLUSION

¶ 21 For the foregoing reasons, we reverse the judgment to the extent it invalidates the *in terrorem* clauses in the Will, the Trust, and related testamentary documents. We affirm the remainder of the judgment.

CONCURRING: JOHN C. GEMMILL, and MARGARET H. DOWNIE, Judges.