NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

In re the Matter of:

RICHARD A. SIMONSON, *Deceased.*

XOCHIL ALMADA-NEGRETE, *Plaintiff/Appellant*

*v.*

MICHAEL SIMONSON, et al., *Defendants/Appellees.*

No. 1 CA-CV 22-0152
FILED 12-20-2022

---

Appeal from the Superior Court in Maricopa County
Nos.  CV2020-054972
PB2018-003684
The Honorable Thomas Marquoit, Judge *Pro Tempore*

**AFFIRMED**

---

**COUNSEL**

Andersen PLLC, Scottsdale
By Mark W. Hawkins
*Counsel for Plaintiff/Appellant*

Tiffany & Bosco PA, Phoenix
By Tina M. Ezzell
*Counsel for Defendants/Appellees, Simonsons and the Estate*

Bryan Cave Leighton Paisner LLP, Phoenix
By Jacob A. Maskovich, Sara A. Boucher
*Counsel for Defendants/Appellees, Merrill Lynch; Pierce, Femer & Smith Inc.;*
*Chins & Bank of America*

---

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

**¶1**　　　Xochil Almada-Negrete appeals the probate court's dismissal of her petitions to remove a personal representative and appoint herself as either the personal representative or a special administrator of an estate. She also appeals the probate court's dismissal with prejudice of claims she raised on behalf of the estate. For the following reasons, we affirm.

### BACKGROUND

**¶2**　　　On September 13, 2018, Richard Simonson (the decedent) succumbed to pancreatic cancer. Two weeks later, Michael Simonson (Simonson), the decedent's brother and sole intestate heir, applied for an informal appointment as the personal representative to administer the decedent's estate (the probate matter). Upon his appointment, Simonson published a notice to creditors, demanding the presentation of any claims against the decedent's estate within four months of the notice's publication.

**¶3**　　　During those four months, Almada-Negrete submitted a claim against the estate in the principal amount of $420,000. As outlined in her notice of claim, Almada-Negrete asserted that the decedent issued her a check for $420,000 less than a week before his death and that "someone other than" the decedent placed a stop payment on it. To substantiate her claim, Almada-Negrete attached copies of the signed, dated (September 7, 2018) check and a contemporaneous note written on the back of a Merrill Lynch envelope by the decedent.

**¶4**        After submitting her claim, Almada-Negrete petitioned to set aside Simonson's appointment and requested the formal appointment of a personal representative, asserting *she* "has priority." In her petition, Almada-Negrete explained that the decedent frequently gave her monetary gifts ("checks in envelopes") during their six-year romantic relationship and recounted that upon giving her the $420,000 check a few days before his death, the decedent instructed her to deposit it "that day." Although she attempted to follow this instruction, Almada-Negrete stated she could not do so because Simonson allegedly instructed the decedent's bank (Merrill Lynch) to stop payment on the check. Contending that the decedent's check and handwritten note, together, "constitute a holographic will," Almada-Negrete asserted that she is a "devisee" entitled to priority of appointment as the personal representative. Alternatively, Almada-Negrete argued that the decedent issued her "a bad check," entitling her to damages for twice the amount of the check.

**¶5**        In his objection to the petition, Simonson acknowledged Almada-Negrete's relationship with the decedent and the legitimacy of both the check and the handwritten note. But he denied placing a stop payment on the check and again asserted that he was the decedent's sole heir.

**¶6**        After lodging his objection, Simonson moved for summary judgment. First, arguing that the check and handwritten note, as a matter of law, do not constitute a valid holographic will. Second, denying that the decedent wrote a "bad check" as defined under the governing statute, A.R.S. § 12-671.

**¶7**        In response to the motion for summary judgment, Almada-Negrete withdrew her "bad check" claim but maintained that she is the devisee of the decedent's holographic will. After full briefing and oral argument, the probate court granted summary judgment in Simonson's favor and dismissed Almada-Negrete's petition *without* prejudice. Thereafter, Simonson moved to amend the summary judgment order to a dismissal *with* prejudice, and Almada-Negrete moved to amend her petition to add claims of completed intervivos gift and wrongful dishonor of a negotiable instrument. The probate court granted Simonson's motion to amend the order and denied Almada-Negrete's motion for leave to amend the petition, concluding "that the proposed amendments would be futile." Specifically, the probate court reasoned that the check was neither deposited, as necessary to support a claim for a completed intervivos gift, nor a contract, as required to support a claim for wrongful dishonor of a negotiable instrument.

3

¶8        Meanwhile, under a separate cause number (the civil case), Almada-Negrete filed a complaint against Merrill Lynch, Pierce, Fenner & Smith (Merrill Wealth Management) and a Merrill Lynch employee (and his wife) (collectively, the Merrill Lynch Defendants), and Simonson (and his wife), alleging that the Merrill Lynch Defendants and Simonson, "acting in concert," withheld the monies the decedent had bestowed to her. Based on these allegations, Almada-Negrete raised claims of completed gift, wrongful dishonor of a negotiable instrument, fraud, conversion, conspiracy to commit fraud, and breach of fiduciary duty. The Merrill Lynch Defendants moved to dismiss. After full briefing and oral argument, the superior court dismissed Almada-Negrete's claims for completed gift, wrongful dishonor of a negotiable instrument, conversion, and breach of fiduciary duty against the Merrill Lynch Defendants without prejudice. The superior court denied the Merrill Lynch Defendants' motion in part, however, ordering Almada-Negrete to plead with particularity the surviving claims of fraud and conspiracy to commit fraud.

¶9        Following the superior court's rulings in the civil case, Almada-Negrete moved for a new trial, relief from judgment, and leave to file an amended complaint in the probate case. Pointing to her "new" claims against the Merrill Lynch Defendants, the probate court granted Almada-Negrete both relief from judgment (vacating its order dismissing her petition with prejudice) and leave to amend. After Almada-Negrete filed an amended petition, the probate court granted her request to consolidate the probate and civil cases.

¶10        After consolidation, the Merrill Lynch Defendants and Simonson separately moved to dismiss the amended complaint. Almada-Negrete, in turn, petitioned for formal appointment as a special administrator of the decedent's estate. After full briefing and oral argument, the probate court entered final judgment, granting both motions to dismiss. Concerning the Merrill Lynch Defendants, the probate court found that Almada-Negrete lacked standing to bring claims on behalf of the decedent's estate because she was not the appointed personal representative. Turning to her claims against Simonson, the probate court referenced its prior rulings - that the check and handwritten note do not constitute a holographic will and that an undeposited check is not a completed gift - and determined that Almada-Negrete "has no standing to pursue appointment as personal representative." The probate court likewise found that "the appointment of a special administrator would provide no benefit to the estate." Therefore, Almada-Negrete lacked the authority to pursue her claims against Simonson. Almada-Negrete timely appealed.

**DISCUSSION**

¶11 As a preliminary matter, we consider the scope of this appeal. Rather than challenge the probate court's dismissal of her completed gift, wrongful dishonor, conversion, fraud, and breach of fiduciary duty claims, Almada-Negrete contests only its dismissal of those claims *with prejudice*. That is, she contends the probate court erred by failing to hold an evidentiary hearing on her petitions to remove Simonson as the personal representative and appoint her as either the personal representative or a special administrator. Absent an evidentiary hearing, she argues the dismissal of her claims *with prejudice*, based primarily on her purported lack of standing to pursue claims on behalf of the decedent's estate, was premature. Contrary to the probate court's findings, Almada-Negrete asserts that she has the authority to pursue claims on the estate's behalf as a devisee, beneficiary, creditor, and interested person.

¶12 We review de novo an order granting a motion to dismiss. *In re Estate of Olsen*, 251 Ariz. 209, 210, ¶ 8 (App. 2021). On review, we accept as true all well-pled factual allegations and reasonable inferences therefrom, *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008), and will affirm only if, as a matter of law, the petitioner "would not be entitled to relief under any interpretation of the facts," *Coleman v. City of Mesa*, 230 Ariz. 352, 356, ¶ 8 (2012) (quotation and citation omitted). We will uphold the probate court's ruling if it is correct for any reason. *See Forszt v. Rodriguez*, 212 Ariz. 263, 265, ¶ 9 (App. 2006).

¶13 First, relying on several statutes and a probate rule, Almada-Negrete contends that the probate court erred by dismissing with prejudice her petition to remove Simonson as personal representative and appoint her in his stead or as a special administrator without holding an *evidentiary* hearing.[1] We consider the requirements outlined in the cited authorities.

¶14 Under A.R.S. § 14-3611(A), "[a] person interested in [an] estate may petition for removal of a personal representative for cause at any time." Upon the filing of such a petition, "the court shall fix *a time and place for a hearing*," and "[n]otice shall be given by the petitioner to the personal representative." *Id.* (emphasis added).

---

[1] We find no merit to Simonson's contention that Almada-Negrete waived any right to an evidentiary hearing by failing to request one. The record reflects that Almada-Negrete sought an evidentiary hearing before the probate court ruled on the motions to dismiss.

¶15        Section 14-3203(A) establishes the priority of appointment for a personal representative "in the following order": (1) "[t]he person with priority as determined by a probated will"; (2) the decedent's surviving spouse who is a devisee; (3) the decedent's other devisees; (4) the decedent's surviving spouse; (5) other heirs; (6) the department of veterans' services, if the decedent was a veteran (or spouse or child of a veteran); (7) any creditor; or (8) a public fiduciary. A.R.S. § 14-3203(A). Notwithstanding statutory priority, "[a] person is not qualified to serve as a personal representative" if found "unsuitable" by a court "*in formal proceedings*." A.R.S. § 14-3203(F)(2) (emphasis added).

¶16        Similar to A.R.S. § 14-3611(A), the statute governing special administrators authorizes a court to appoint a special administrator "on the petition of any interested person . . . , after *notice and hearing*," if such "appointment is necessary to preserve the estate or to secure its proper administration." A.R.S. § 14-3614(2) (emphasis added). And, under the Arizona Rules of Probate Procedure (Probate Rule) 15(a), any written request for substantive relief "usually requir[es] advance notice to interested persons and *a hearing*." (Emphasis added.)

¶17        Although the cited statutes and rule mandate, or at least contemplate, notice and a hearing, none require an *evidentiary* hearing. In this case, the probate court held multiple hearings on Almada-Negrete's petitions before dismissing them.

¶18        Notably, Almada-Negrete fails to identify any prejudice she suffered from the lack of an evidentiary hearing, nor could she. At that stage of the proceedings, the probate court was required to accept each of the petitions' well-pled allegations as true – meaning Almada-Negrete carried no evidentiary burden. To be clear, for purposes of considering the motions to dismiss, the probate court had to presume as true Almada-Negrete's allegations that: (1) the decedent issued her the $420,000 check, (2) the decedent handwrote the note on the envelope, (3) the decedent told her to deposit the check "that day," (4) she attempted to deposit the check, (5) she was unable to deposit the check because a Merrill Lynch employee contacted Simonson and he provided false information, leading the employee to stop payment on the check, (6) Simonson blocked the transfer of the monies the decedent had attempted to gift her to preserve the monies for himself as the decedent's sole intestate heir, and (7) Merrill Lynch stopped payment on the check because Simonson had a large loan with its parent company, Bank of America, and would "direct[ly] benefit [from Simonson receiving the money] in the form of increased collateral." Because the superior court was required to accept these allegations as true for

purposes of resolving the motions to dismiss, it is difficult to see how an evidentiary hearing would be useful, let alone necessary. Given the procedural posture and the absence of any legal authority requiring an *evidentiary* hearing, we reject Almada-Negrete's contention that the probate court was procedurally barred from dismissing her petitions.

¶19 Next, Almada-Negrete challenges the probate court's determination that she lacked standing to petition for Simonson's removal as personal representative and request *her* appointment as the personal representative or a special administrator. Sections 14-3611(A) and -3614(2) limit the persons who may challenge the appointment of a personal representative or seek appointment as a special administrator to "interested" persons. And, as relevant here, A.R.S. § 14-3203 limits the priority of appointment to devisees.

¶20 As defined by statute, an "[i]nterested person" includes a devisee, beneficiary, creditor, or any "other person who has a property right in or claim against . . . the estate of a decedent." A.R.S. § 14-1201(33). A "devisee" is "a person designated in a will to receive" real or personal property. A.R.S. § 14-1201(14), (15). As relevant to this case, a beneficiary is a devisee or donee "designated in a governing instrument" – "a deed, will, trust, insurance or annuity policy, account with pay on death designation, security registered in beneficiary form, pension, profit sharing, retirement or similar benefit plan, instrument creating or exercising a power of appointment or a power of attorney or a dispositive, appointive or nominative instrument of any similar type." A.R.S. § 14-1201(4), (27). While A.R.S. § 14-1201 does not define creditor, it defines claims as "liabilities of the decedent . . . whether arising in contract, in tort or otherwise, and liabilities of the estate that arise at or after the death of the decedent." A.R.S. § 14-1201(8).

¶21 First, we consider Almada-Negrete's claim that she is a devisee, challenging the superior court's finding that the check and handwritten note, together, do not constitute a holographic will.[2] A will is "valid as a holographic will, whether or not witnessed, if the signature and the material provisions are in the handwriting of the testator." A.R.S. § 14-

---

[2] Simonson asserts that this court lacks jurisdiction to consider the probate court's holographic-will ruling because Almada-Negrete did not specifically reference that ruling in her notice of appeal; instead, citing only the final judgment. Because the probate court incorporated its holographic-will ruling as a legal predicate for its final judgment, we find no merit to Simonson's jurisdiction claim.

2503. "It is . . . well established that a holographic instrument, to serve as a will, must demonstrate that the testator had testamentary intent." *Blake's Estate v. Benza*, 120 Ariz. 552, 553 (App. 1978); *In re Johnson's Estate*, 129 Ariz. 307, 309 (App. 1981) ("The statutory requirement that the material provisions be drawn in the testator's own handwriting requires that the handwritten portion clearly express a testamentary intent."). "Testamentary intent requires that the writing, together with such extrinsic evidence as may be admissible, establish that the decedent intended such writing to dispose of his property *upon his death*." *Blake's Estate*, 120 Ariz. at 553 (emphasis added).

¶22         It is uncontested that the decedent issued the $420,000 check to Almada-Negrete, placed it in a Merrill Lynch envelope, and handwrote the following note on the back of the envelope before giving it to her:

> Hello to the most beautiful love in the whole world. So sad my amor Xochilita this may be "last" envelope. Ricardo has plenty more babe but me can't figure out your rico paydates. Ha ha ha. I think its easier this way anyway instead of wasting all those envelopes just uno grande one is perfecto. When I wrote perfecto English you couldn't read this [expletive] so I guess its even worse now. Asta luego mi amor. I will always love you todo mi corazon. Yes mucho [illegible].

The question is whether the decedent had the requisite testamentary intent. On its face, nothing in the handwritten note demonstrates an intent to dispose of the decedent's property *upon his death*. Nor does the check, dated the day it was issued, manifest an intent to delay a transfer of monies until the decedent's death. And, according to Almada-Negrete, the decedent instructed her to deposit the check immediately – "that day" – belying any assertion that the decedent wrote the check with the intent to dispose of the property *upon his death*. Given these undisputed facts, the probate court did not err by determining that the check and handwritten note do not constitute a valid holographic will. Because Almada-Negrete is not "a person designated in a will" or other "governing instrument" to receive real or personal property, she is neither a devisee nor a beneficiary for standing purposes. A.R.S. § 14-1201(4), (14), (15), (27).

¶23         The remaining issue is whether Almada-Negrete qualifies as a creditor or, more generally, someone "who has a property right in or claim against . . . the estate of a decedent." A.R.S. § 14-1201(33). While "creditor" is commonly defined as "any person to whom a debt is owed," *Snyder v. Tucson Police Pub. Safety Pers. Ret. Sys. Bd.*, 201 Ariz. 137, 141, ¶ 12 (App.

2001) (internal quotation and citation omitted), "claim" is defined more broadly as a liability of the decedent, A.R.S. § 14-1201(8), which may encompass a legal obligation apart from a debt. Here, the decedent neither owed Almada-Negrete a debt nor a legal duty. Stated differently, accepting Almada-Negrete's allegations as true, as we must, the decedent attempted to transfer monies to her voluntarily, but in so doing, he neither incurred a debt nor assumed a liability. Put simply, had the decedent issued the stop payment on the $420,000 check, Almada-Negrete would have had no legal recourse against him. Thus, Almada-Negrete qualifies as neither a creditor nor a claim-holder against the decedent's estate.

**¶24** Having failed to qualify as an "interested" person in any of its definitional forms, Almada-Negrete lacked standing to petition to remove Simonson as a personal representative and seek an appointment as a special administrator. Likewise, she lacked priority for an appointment as a personal representative. Lacking standing and priority for the appointment, Almada-Negrete had no authority to pursue claims against Simonson and the Merrill Lynch Defendants on the estate's behalf.[3] Accordingly, the probate court did not err by dismissing her motions with prejudice.[4]

---

[3]     To the extent Almada-Negrete cites *In re Estate of Stewart*, 230 Ariz. 480 (App. 2012), for the proposition that she has standing independent of the statutory "interested" person requirement, her reliance is misplaced. In that case, a disinherited child sought to invalidate *in terrorem* clauses that arguably compelled his siblings to withhold discovery in his action to contest their father's will. *Id.* at 482–83, ¶¶ 3–10. This court determined that the disinherited child had "adequately alleged injury from enforcement of the clauses . . . [and] therefore had standing to contest" them. *Id.* at 483, ¶ 10. Consistent with the probate court's reasoning, we find *Stewart* readily distinguishable from the circumstances here. Most notably, *Stewart* did not involve a petition to remove or appoint a personal representative or special administrator. Moreover, in that case, the disinherited child would become a beneficiary or devisee – an interested party – if able to successfully challenge his father's will. Here, there are no circumstances under which Almada-Negrete may become an "interested" person in the decedent's estate, as that term is statutorily defined.

[4]     In her reply briefs, Almada-Negrete alternatively argues that the probate court, having been notified of her allegations, had an obligation to appoint a public fiduciary. Because Almada-Negrete failed to raise this claim in her opening brief, we do not address it. *In re Marriage of Pownall*,

**CONCLUSION**

¶25        For the foregoing reasons, we affirm. Almada-Negrete has requested her attorney's fees and costs under A.R.S. § 14-11004 (stating a trustee "is entitled to reimbursement from the trust" for attorney's fees and costs arising out of "the good faith defense or prosecution of a judicial . . . proceeding involving the administration of the trust"), and *In re Estate of Brown*, 137 Ariz. 309, 314 (App. 1983) (holding that a probate court may, "upon a consideration of all of the facts and equities," award attorney's fees "from the assets of the estate in the event that it feels, in the proper exercise of its discretion, that such fees are appropriate and justified"). We deny her request. Simonson requests an award of his attorney's fees under A.R.S. § 14-1105(A) (authorizing a court to order a person who has engaged in "unreasonable conduct" that caused a decedent's estate to incur expenses to pay for some or all of the expenses) and A.R.S. § 12-349(A)(1), (3) (requiring a court to assess reasonable attorney's fees against a party who brings a claim without substantial justification or unreasonably expands or delays the proceeding). We do not find Almada-Negrete's arguments manifestly unreasonable, groundless, or brought in bad faith and deny Simonson's request. As the prevailing parties, however, we award Simonson and the Merrill Lynch Defendants their costs under A.R.S. § 12-342 upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

197 Ariz. 577, 583, ¶ 25 n.5 (App. 2000) (holding arguments raised for the first time in a reply brief are waived).