NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

_____

In re the Matter of:

OAKLAND LIVING TRUST

_____

CATHERINE S. FELLERS, et al., *Petitioners/Appellants,*

*v.*

VICTORIA NORRIS, et al., *Defendants/Appellees.*

No. 1 CA-CV 22-0288
FILED 1-31-2023

_____

Appeal from the Superior Court in Maricopa County
No. PB2014-000972
The Honorable Dean M. Fink, Judge

**AFFIRMED**

_____

COUNSEL

Anthony Law Group, Scottsdale
By Stephen J. Anthony
*Counsel for Petitioners/Appellants*

Thorpe Schwer, P.C., Phoenix
By André H. Merrett
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

¶1        Trust beneficiaries Catherine Fellers and Gary Bailey appeal from the superior court's denial of their petition to forfeit the beneficiary interests of James Bailey and Victoria Norris.[1] We find no reversible error and affirm the court's judgment.

### FACTS AND PROCEDURAL BACKGROUND

¶2        The beneficiaries' mother, Patricia Oakland, established the Oakland Living Trust ("Trust"). The Trust entitled each beneficiary to a 25% share of Patricia's assets upon her death and named James as the successor trustee.

¶3        The Trust contained a no-contest clause, which disinherited a beneficiary that:

> f.        Attacks or seeks to impair or invalidate (whether or not any such attack or attempt is successful) any designation of beneficiaries for any insurance policy on [Patricia's] life or any designation of beneficiaries for any pension plan, Keogh, SEP, or IRA;
>
> g.        In any other manner contests [Patricia's] Trust Agreement, or any amendment thereto executed by [Patricia], or in any other manner, attacks or seeks to impair or invalidate any of [Patricia's] Trust's provisions; [or]
>
> h.        Conspires with or voluntarily assists anyone attempting to do any of the above acts.

¶4        The Trust provided for the appointment of a co-trustee. If the trustor is alive, the trustor "shall designate" a co-trustee if the co-trustee "is

---

[1]        We refer to the beneficiaries by their first names to avoid confusion.

needed to act." If the trustor is not alive, then the trustee "shall have the right to designate" a co-trustee. If appointed, the co-trustee can perform certain functions "to the extent that the discretionary authority of [the] Trustee to perform a function might constitute an act of self-dealing." For example, if the trustee has a conflict of interest, the co-trustee can value property or decide on trust distributions. No co-trustee was ever appointed.

¶5        The Trust terms direct the trustee to distribute to the beneficiaries an amount that the trustee "determines is necessary." Before making any discretionary distribution, the trustee must "give consideration to all other income and resources." The trustee may postpone distribution to one of the beneficiaries if the trustee determines a compelling reason to do so and notifies the beneficiary of the postponement. The Trust terms include a non-exhaustive list of examples of compelling reasons to postpone distributions. James has not distributed Trust assets since March 2012.

¶6        Patricia died in November 2011. When Patricia died, she owned, *inter alia*, a life insurance policy from MetLife Insurance Company ("MetLife"), an Individual Retirement Account ("IRA") from Protective Life Insurance Company ("Protective Life"), an IRA and Money Market Account from Waddell & Reed ("Waddell"), a Fidelity & Guaranty Life ("Fidelity") insurance policy, and real property in Phoenix. Patricia designated the Trust as the beneficiary of the MetLife policy, the Protective Life IRA, and the Waddell accounts. And Patricia designated her four children as beneficiaries of the Fidelity policy. Victoria took possession of Patricia's financial documents after Patricia died, and the siblings agreed to have Patricia's mail forwarded to Victoria's address.

¶7        Upon her death, Patricia also owned a Bank of America checking account, on which she listed Victoria as a "Joint [owner] with Right of Survivorship." Patricia and Victoria also jointly owned certificates of deposit with Amtrust Bank. The beneficiaries' attorney informed the beneficiaries that because Patricia had died, the checking account and certificates of deposit now solely belonged to Victoria. Victoria took possession of the bank account upon her mother's death. Victoria gave each sibling $13,000 from the certificates of deposit but decided not to distribute the remaining funds.

¶8        Shortly after Patricia died, Victoria deposited a check issued from Waddell before Patricia's death into the Bank of America checking account. Waddell also directly deposited a check into the account. Victoria did not transfer these funds to the Trust.

¶9 In early 2012, James deposited proceeds of the Waddell Money Market Account and the MetLife Policy into the Trust bank account. James partially distributed the funds from the money market account to the beneficiaries.

¶10 Around April 2012, James submitted a claim to receive the proceeds from the Protective Life IRA in a lump sum. Catherine and James worked with their attorney to request that Protective Life divide the IRA into four equal accounts to avoid tax consequences, but Protective Life declined to do so. Instead, Protective Life paid the benefits to the Trust in a lump sum, and James deposited the proceeds in the Trust's bank account. James did not distribute these proceeds. The parties' counsel began discussing potential Trust litigation in March 2013.

¶11 In July 2013, without notifying Gary or Catherine, James transferred the Trust's real property to himself, Victoria, and Victoria's husband through a quitclaim deed. James testified his bank told him he needed to pledge the property as collateral to obtain a loan to purchase the property. Once James transferred the title, the bank hired an appraiser to value the property. James reduced the purchase price by six percent from the appraised value to account for the amount the Trust would have paid for real estate commission.[2] James, Victoria, and Victoria's husband then borrowed half of the reduced purchase price and deposited this money to the Trust account to cover Gary's and Catherine's shares. Throughout the real estate transaction, James relied on the advice of his lender and attorney. James has not distributed the real estate proceeds to Gary or Catherine.

¶12 In May 2014, Victoria notified Fidelity that Patricia had died. That same month, Victoria's and James's attorney informed them that because each sibling was a beneficiary of the policy, they would each need to submit their claim for benefits. But Catherine and Gary did not learn of the policy until around January 2015, when they received letters from Fidelity because James never listed the policy in an asset disclosure or accounting.

¶13 In November 2014, James, acting as trustee, submitted a claim to Fidelity for payment to the Trust. Fidelity requested that James withdraw

---

[2] In a prior ruling, the superior court found the six percent deduction unreasonable and ordered the property to be valued without the deduction. The court also ensured that the closing costs and transfer fee for the transaction would not be charged to the Trust.

the claim because the four siblings were the policy's beneficiaries, not the Trust. Fidelity would not pay the siblings their benefits until James withdrew the Trust claim. In February 2015, James removed the Trust claim, and Catherine and Gary received their benefits.

**¶14**        Catherine and Gary petitioned to remove James as trustee, alleging he breached several fiduciary duties. The superior court denied the petition, and this court affirmed the decision.[3] *In re Oakland Living Trust (Oakland I)*, No. 1 CA-CV 16-0073, 2017 WL 2544836, at *6, ¶ 34 (Ariz. App. June 13, 2017) (mem. decision).

**¶15**        Catherine and Gary also petitioned to remove James's and Victoria's beneficiary interests under the Trust, alleging they violated subsections (f), (g), and (h) of the Trust's no-contest clause. Both parties filed motions for summary judgment on the forfeiture petition. The superior court denied Catherine's and Gary's cross-motion and granted Victoria's and James's motion for summary judgment. This court affirmed the denial relating to Catherine and Gary but reversed the granting of Victoria's and James's summary judgment. *In re Oakland Living Trust (Oakland II)*, No. 1 CA-CV 19-0759, 2021 WL 1183010, at *4, ¶ 15 (Ariz. App. Mar. 30, 2021) (mem. decision). We concluded the no-contest clause applied to all four siblings, including James, the trustee-beneficiary, and that genuine issues of material fact precluded summary judgment. *Id.* at *3–4, ¶¶ 11–12.

**¶16**        The superior court held a bench trial to consider Gary's and Catherine's petition to forfeit James's and Victoria's beneficiary interests in the Trust. After the siblings testified, the court denied the petition, finding neither James nor Victoria violated subsections (f), (g), or (h) of the Trust's no-contest clause. The superior court entered judgment for James and Victoria, and Gary and Catherine appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶17**        On appeal, Gary and Catherine assert James and Victoria violated subsection (f) of the no-contest clause by pursuing the Fidelity

---

[3]        James petitioned to forfeit Catherine's and Gary's beneficiary interests under the no-contest clause based on the removal petition. But the superior court denied the petition, finding that Catherine and Gary had probable cause to seek to remove James as trustee.

annuity benefits for the Trust and failing to turn over the Waddell IRA funds to the Trust. They also argue that James and Victoria violated subsection (g) of the no-contest clause by failing to distribute Trust assets or appoint a co-trustee. Finally, Gary and Catherine contend James and Victoria violated subsection (h) of the no-contest clause by working together to commit the above allegations. The superior court did not err by finding that James and Victoria did not violate the no-contest clause and denying the petition to remove James's and Victoria's beneficiary interests.[4]

**¶18**        We view the facts in the light most favorable to sustaining the superior court's judgment. *In re Estate of Pouser*, 193 Ariz. 574, 576, ¶ 2 (1999). "We will not set aside the . . . court's findings of fact unless clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of witnesses." *In re Estate of Zaritsky*, 198 Ariz. 599, 601, ¶ 5 (App. 2000); *see also* Ariz. R. Civ. P. 52(a)(6). We do not reweigh conflicting evidence; we determine whether substantial evidence supports the court's ruling. *Pouser*, 193 Ariz. at 579, ¶ 13.

**¶19**        "We review the superior court's legal conclusions *de novo*." *Zaritsky*, 198 Ariz. at 601, ¶ 5. When interpreting a trust document, the goal is to "ascertain the intent of the trustor." *In re Estate of Zilles*, 219 Ariz. 527, 530, ¶ 8 (App. 2008). We determine the trustor's intent by looking "within the four corners of the instrument . . . and when necessary or appropriate, the circumstances under which the [instrument] was made." *Id.* (quoting *In re Gardiner's Estate*, 5 Ariz. App. 239, 240–41 (1967)).

**¶20**        "The law favors testamentary disposition of property." *In re Estate of Shumway*, 198 Ariz. 323, 326, ¶ 7 (2000). Because the Trust's no-contest clause operates as a forfeiture, which the law disfavors, *see id.* at 328, ¶ 14, we will find a violation "only when the acts of a party come strictly within its express terms." Claudia G. Catalano, Annotation, *What Constitutes Contest or Attempt to Defeat Will Within Provision Thereof Forfeiting Share of Contesting Beneficiary*, 3 A.L.R. 5th 590 § 2[a] (1992); *see also Shumway*, 198 Ariz. at 328, ¶ 14 (citing this section of the A.L.R.); Restatement (Third) of Prop.: Wills & Other Donative Transfers § 8.5 cmt. d (Am. L. Inst. 2003) ("No-contest clauses are construed narrowly, consistent with their terms.");

---

[4]        Gary and Catherine also assert that the superior court judge violated the Arizona Code of Judicial Conduct. We lack the authority to consider this claim. Arizona's Commission on Judicial Conduct and the Arizona Supreme Court handle complaints and investigate cases involving judicial conduct. *In re Peck*, 177 Ariz. 283, 284–85 (1994); *see also* Ariz. Const. art. 6.1.

*see also* A.R.S. § 14-10112 ("The rules of construction that apply in this state to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property.").

**¶21**　　　When ruling on the parties' summary judgment motions, the superior court interpreted the no-contest clause provisions. Looking at dictionary definitions of "attack," "seek," "impair," and "invalidate," the court found that a no-contest clause violation occurs when a Trust beneficiary contests or tries to diminish or nullify 1) any of the decedent's beneficiary choices or 2) a Trust provision. Though we reversed the superior court's grant of summary judgment for other reasons, *see Oakland II*, 1 CA-CV 19-0759, at *4, ¶ 15, we agree with its no-contest clause interpretation. The trustor's inclusion of the words "attack" and "seek" suggests that forfeiture requires more than an impairment. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019) (We must "give meaning, if possible, to every word and provision."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("[E]very word and every provision is to be given effect."). A violation of the Trust's no-contest clause requires proof of intent or an attempt to diminish or nullify a beneficiary designation or a Trust provision.

**¶22**　　　Most of the issues raised have been addressed in prior rulings. The parties participated in three trials, and this court has issued two decisions about this Trust and these parties. We will not disturb the legal conclusions already determined in prior decisions unless we find a clear error or a change in the law, issue, or evidence. *See Dancing Sunshines Lounge v. Indus. Comm'n of Ariz.*, 149 Ariz. 480, 482 (1986) ("[T]he decision of a court in a case is the law of that case on the issues decided throughout all subsequent proceedings in both the trial and appellate courts, provided the facts, issues and evidence are substantially the same as those upon which the first decision rested."); *see also* Ariz. Sup. Ct. R. 111(c)(1)(a) (Memorandum decisions may be cited to establish the law of the case.).

## A.　　The Superior Court Did Not Err by Finding James and Victoria Did Not Violate Subsection (f) of the No-Contest Clause.

**¶23**　　　On appeal, Catherine and Gary assert that, in violation of subsection (f), James and Victoria attacked or sought to impair or invalidate Catherine's and Gary's beneficiary interests in the Fidelity policy by failing to timely notify Fidelity of Patricia's death, failing to notify Catherine and Gary that they were designated policy beneficiaries, and submitting a Trust claim to Fidelity.

**¶24** James testified that he never tried to remove or change the policy's beneficiaries. James and Victoria both testified they never sought to conceal the annuity from Gary and Catherine. Victoria said she first disregarded Fidelity's letters because she believed Gary and Catherine had the information. When she finally read the letters, her attorney told her she "didn't have to worry" because Fidelity would contact the siblings individually. James testified he thought the Trust was the annuity beneficiary and that submitting the Trust claim was a mistake rather than an attempt to interfere with Gary's and Catherine's policy rights. James explained he withdrew the Trustee claim when Fidelity informed him the Trust was not the beneficiary.

**¶25** The superior court found that "[n]either James nor Victoria ever attacked or attempted to impair or invalidate any designation of beneficiaries on the [Fidelity] Annuity." The court adopted James's testimony that he was mistaken about the Trust claim submission, and the court found "no nefarious intent on his part."

**¶26** On appeal, Gary and Catherine discredit James's and Victoria's explanations by arguing that James never listed the policy as a Trust asset, Victoria never submitted her claim as a beneficiary, and they were told the siblings, rather than the Trust, were the policy's beneficiaries. But this court's role is not to reweigh conflicting evidence or reevaluate witness credibility.[5] *Zaritsky*, 198 Ariz. at 601, ¶ 5; *Pouser*, 193 Ariz. at 579, ¶ 13. Based on the trial testimony, the court could have reasonably concluded James made a mistake in his claim submission and that James

---

[5] Gary and Catherine also rely on *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), to contend the superior court should have disregarded James's and Victoria's testimonies because they contained "self-serving statements" that were "solely based on the parties' self-serving credibility." Their reliance is misplaced. In *Reeves*, the court explained that when ruling on a motion for judgment as a matter of law in a jury trial, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151. Here, on the other hand, the superior court held a bench trial and never considered a motion for judgment as a matter of law. As the fact finder, the superior court judge was to observe the witnesses and assess their credibility during the bench trial. *See Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51, ¶¶ 6, 11 (App. 2009) (When reviewing a bench trial ruling, we give "due regard to the opportunity of the court to judge the credibility of witnesses."). The *Reeves* standard does not apply.

and Victoria lacked the requisite intent under the no-contest clause. Substantial evidence supported the superior court's finding that James and Victoria did not attack or seek to impair or invalidate Gary's and Catherine's beneficiary interests in the Fidelity policy.

¶27 Gary and Catherine also assert that, in violation of subsection (f), Victoria attacked or sought to impair the designation of the Trust as the beneficiary of the Waddell & Reed IRA by depositing an IRA distribution into her bank account, keeping a direct deposit check from the IRA in the account, and failing to transfer the funds to the Trust.

¶28 At trial, Victoria explained that these funds would have been deposited into the joint checking account before her mother died. And Waddell issued the check before Patricia died. As a result, Victoria did not notice the direct deposit in the account until after the litigation began. She also explained she did not transfer the funds to the Trust because James's attorney told her that the money would be handled in the Trust's final accounting.

¶29 The superior court found Victoria's statement that she believed she was supposed to deposit the check into the bank account credible. It found that Gary and Catherine failed to sufficiently show Victoria attempted "to improperly deprive the Trust of [the two checks] received from Waddell & Reed."

¶30 On appeal, Gary and Catherine assert there was no support for Victoria's testimony. They claim she should have known about the direct deposit because she was using the account around the time of the deposit. But we will not reweigh conflicting evidence, and we defer to the superior court's credibility assessments. *Zaritsky*, 198 Ariz. at 601, ¶ 5; *Pouser*, 193 Ariz. at 579, ¶ 13. Based on Victoria's belief that depositing the check into the account was appropriate, her testimony that she overlooked the direct deposit, and her understanding that the funds would be eventually considered in a final Trust accounting, the superior court could have reasonably found Victoria did not attack or seek to impair or invalidate the designation of the Trust as the beneficiary of the Waddell & Reed IRA.

¶31 Thus, we conclude the court did not err by finding that James and Victoria did not violate subsection (f) of the no-contest clause.

**B.**     **The Superior Court Did Not Err by Finding James and Victoria Did Not Violate Subsection (g) of the No-Contest Clause.**

¶32           On appeal, Gary and Catherine argue that James and Victoria, in violation of subsection (g), attacked or sought to impair or invalidate the Trust provisions about the appointment of a co-trustee and the distribution of assets to the beneficiaries.

>       **1.**     **James Did Not Seek to Impair or Invalidate the Trust Provisions Concerning the Appointment of a Co-Trustee.**

¶33           Gary and Catherine contend James violated subsection (g) of the Trust by failing to appoint a co-trustee to manage the real estate transaction. This court addressed James's failure to establish a co-trustee when affirming the denial of Gary's and Catherine's petition to remove James as trustee. *See Oakland I*, 1 CA-CV 16-0073, at *3, ¶ 18. In the current appeal, the superior court found that because James's actions did not rise to the level necessary to remove him as trustee, they would be insufficient to remove him as a beneficiary of the same Trust.

¶34           At the trial, James testified his attorney never told him the appointment of a co-trustee was required, and he thought he did not need to appoint one. The superior court found that James acted at his counsel's direction throughout the real estate transaction. Thus, the superior court could reasonably conclude James did not seek to diminish the Trust provisions because he did not think he needed to appoint a co-trustee under the Trust terms.

¶35           Gary and Catherine assert that the Trust required James to appoint a co-trustee for the real estate transaction because it constituted self-dealing and produced conflicts of interest. But according to the Trust, James did not have to appoint a co-trustee. As this court mentioned in *Oakland I*, the Trust authorizes the appointment but does not require a co-trustee when valuing the property. *See Oakland I*, 1 CA-CV 16-0073, at *3, ¶ 18. The Trust provisions discussing the co-trustee's authority to perform in the event of conflicts of interest only reveal powers a co-trustee *would* have if appointed. They do not implicate a requirement that a co-trustee be established.

¶36           Under the Trust terms, if the trustor is alive, the trustor "shall designate" a co-trustee if needed. In the following sentence, the Trust provided that if the trustor is not alive, the trustees "shall have the right to designate" a co-trustee to perform certain functions. "Shall designate" and "shall have the right to designate" must have different meanings. *See* Scalia

& Garner, *supra*, at 170 (A "variation in terms suggests a variation in meaning."). James began the real estate action after Patricia, the trustor, died. Thus, James "h[ad] the right to designate" a co-trustee, but he did not have an obligation to appoint one. *See id.* at 112 ("Mandatory words impose a duty; permissive words grant discretion.").

¶37 Given James's reliance on counsel that he was not legally required to appoint a co-trustee, the failure to do so is not an attack or attempt to impair or invalidate the Trust.

### 2. James and Victoria Did Not Seek to Impair or Invalidate the Trust Provisions Governing the Distribution of Assets.

¶38 Gary and Catherine argue James and Victoria violated subsection (g) of the no-contest clause by transferring the Trust real estate to themselves and failing to distribute the proceeds from the transfer. They claim James and Victoria sought to violate the Trust provision requiring that each sibling have an equal Trust share because James and Victoria "received the in-kind distribution of the real estate asset" while Gary and Catherine "never received any distributions from the Trust related to the real estate."

¶39 As this court explained in *Oakland I*, the real property's appraisal was conducted independently of James and Victoria, and there was no indication it did not represent the property's fair market value. *Oakland I*, 1 CA-CV 16-0073, at *3, ¶ 18. And when interpreting the Trust, this court held that despite the Trust's criteria for postponing a beneficiary's distribution, "the Trust does not provide beneficiaries an entitlement to any particular distributions of their trust share" and that James has "wide discretion to distribute to each beneficiary" as he sees necessary. *Id.* at *4, ¶ 22.

¶40 At the most recent trial, James testified he relied on his lender's and attorney's advice throughout the real estate transaction and never intended to deprive Catherine and Gary of their equal shares in the Trust. He testified he intended to distribute the real estate proceeds but was waiting until after the Trust litigation concluded.

¶41 The superior court found that "although James engaged in an act of self-dealing, it does not appear he intended to do it to benefit himself or Victoria" because "he intended to account for Gary and [Catherine's] equivalent share through a distribution of funds." It further found that Gary and Catherine failed to prove James intended to "deprive them of

their fair share of Trust assets" or that the final distributions would be unequal.

**¶42**        We defer to the superior court's finding that James's testimony about his intent was credible. *Zaritsky*, 198 Ariz. at 601, ¶ 5; *Pouser*, 193 Ariz. at 579, ¶ 13. Given James's testimony, his reliance on the advice of his attorney and his lender, and the trustee's wide discretion to distribute assets under the Trust, the superior court could have reasonably concluded that James did not attack or seek to impair or invalidate the Trust provision granting each sibling an equal share of Trust assets when participating in the real estate transfer.[6]

**¶43**        Gary and Catherine also challenge James's failure to distribute proceeds from the bank account and certificates of deposit, and they assert that Victoria improperly took personal ownership of the assets. Though this issue has already been resolved, Gary and Catherine argue on appeal that these assets belong to the Trust, not Victoria. But this court already concluded that after Patricia died, the bank account and certificates of deposit belonged solely to Victoria and were not Trust assets. *Oakland I*, 1 CA-CV 16-0073, at *5, ¶ 28.

---

[6]        Gary and Catherine also suggest James should have notified them that he planned to withhold the real estate proceeds. They rely on the Trust provision requiring notification to the beneficiary if the trustee decides to postpone a beneficiary's distribution. Gary and Catherine made this same argument when trying to remove James as trustee. But the Trust's criteria for postponing distributions to a beneficiary did not control James's decision not to schedule a distribution. *See Oakland I*, 1 CA-CV 16-0073, at *4, ¶ 22.

        As for the real estate transaction, Gary and Catherine raise several other claims, including that James and Victoria failed to get their consent or court approval for the real estate transaction, created a "false public record" of the property transfer, and "intentionally [misled them] about the status of the real property." Gary and Catherine fail to show how these allegations were attacks on or attempts to invalidate Trust provisions. Moreover, James's reliance on his lender and attorney throughout the real estate transaction weighs against a finding that he and Victoria tried to impair the Trust. We note that Gary and Catherine are seeking to void the real estate transaction in a pending civil action against Victoria and her husband, James, their bank, and the title insurance company, which may be better suited to address the claims.

¶44      The record also shows that Victoria's and James's attorney informed the siblings that the account and certificates of deposit belonged solely to Victoria. Given their reliance on counsel, substantial evidence supported the superior court's conclusion that neither Victoria nor James sought to violate the Trust provision granting each sibling an equal share of Trust assets when Victoria took possession of the accounts and James did not distribute these funds as Trust assets.

¶45      Gary and Catherine also challenge James's failure to distribute the funds from the MetLife policy and the Protective Life IRA. As explained, no beneficiary is entitled to any Trust distribution. *Oakland I*, 1 CA-CV 16-0073, at *4, ¶ 22. James can distribute Trust funds as necessary, "considering the beneficiary's reasonable needs and other resources." *Id.* Given James's testimony that he was preserving Trust assets until the ongoing litigation was resolved, the superior court could have reasonably found he acted within his discretion under the Trust and was not seeking to impair it.

¶46      Finally, Gary and Catherine criticize James's failure to avoid tax consequences with the Protective Life IRA when he could not get the company to roll over the asset into four separate accounts. They claim he diminished trust assets because he did not do enough to avoid the tax consequences. The Trust gave James the authority to roll over retirement plan interests to carry out the Trust requirements or if he determined it was in the beneficiaries' best interests. James worked with an attorney to roll over the IRA interests, but Protective Life would not allow it. The superior court found that Gary and Catherine "offered no credible evidence that further efforts by James would have convinced Protective Life to take different action." And Patricia designated the Trust, not the four siblings, as the beneficiary of the IRA, so the superior court reasonably concluded that James did not try to impair the Trust or any beneficiary designation when he submitted the claim to Protective Life on behalf of the Trust.

¶47      We thus conclude that the superior court did not err by finding that James and Victoria did not violate subsection (g) of the no-contest clause.

## C.    The Superior Court Did Not Err by Finding James and Victoria Did Not Violate Subsection (h) of the No-Contest Clause.

¶48      Gary and Catherine contend that James and Victoria violated subsection (h) of the no-contest clause because they took "concerted effort[s] to improve their beneficiary interests to the direct detriment" of

Gary and Catherine and had the "singular goal and purpose" to steal Trust assets. They urge us to infer that James and Victoria worked together to violate the Trust based on their decisions over the real estate transaction, the Fidelity annuity, and the bank account. The superior court found "no credible evidence indicating that James and Victoria agreed with each other to accomplish any purpose prohibited by the No Contest Clause." Because the superior court could reasonably conclude that neither James nor Victoria attacked or sought to impair or invalidate a beneficiary designation or Trust provision, it could also find they did not conspire with each other or voluntarily assist each other in doing either. We, therefore, conclude that the superior court did not err by finding that James and Victoria did not violate subsection (h) of the no-contest clause.

## ATTORNEY'S FEES

Appellants request attorney's fees under the Trust's Nominee Agreement and A.R.S. § 12-341.01. We decline to award fees because they did not prevail. We award costs to Appellees upon compliance with ARCAP 21.

## CONCLUSION

¶49        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA